# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |
|---|---|
| STRIVE SPECIALTIES INC., | |
| *Plaintiff*, | |
| v. | Case No. 5:26-cv-00155-MA |
| ELI LILLY & CO., NOVO NORDISK A/S, and NOVO NORDISK INC. | |
| *Defendants*. | |

**NOVO NORDISK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (ECF NO. 42)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

ARGUMENT ....................................................................................................................... 1

    I.     STRIVE FAILS TO PLAUSIBLY ALLEGE EXCLUSIVE DEALING. ................ 1

    II.    STRIVE FAILS TO PLAUSIBLY ALLEGE SUBSTANTIAL
         FORECLOSURE. ........................................................................................... 2

    III.   STRIVE FAILS TO PLAUSIBLY ALLEGE THAT THE GLP-1 WEIGHT
         LOSS CASH MARKET IS A PROPER RELEVANT MARKET. ......................... 5

    IV.  STRIVE FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY OR
         ARTICLE III STANDING. ............................................................................. 6

        A.    Strive Fails to Plausibly Allege That It Competes with Novo
             Nordisk. ................................................................................................ 6

        B.    Strive Fails to Plausibly Allege Harm to Itself and to Competition. .......... 8

    V.    STRIVE FAILS TO PLAUSIBLY ALLEGE ANTICOMPETITIVE
         EFFECTS. ...................................................................................................... 9

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
2022 WL 980791 (W.D. Tex. Mar. 31, 2022) ....................................................................9, 10

*Am. Airlines, Inc. v. Travelport Ltd.*,
2012 WL 12507645 (N.D. Tex. Feb. 28, 2012)........................................................................3

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
300 F.3d 620 (5th Cir. 2002) .............................................................................................2, 5, 6

*Barnosky Oils, Inc. v. Union Oil Co. of Cal.*,
582 F. Supp. 1332 (E.D. Mich. 1984)......................................................................................3

*BNI Franchising, LLC v. Network for Action Int'l, LLC*,
2026 WL 818331 (S.D. Tex. Mar. 24, 2026)........................................................................4, 8

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
49 F.4th 520 (5th Cir. 2022) .................................................................................................2, 4

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ....................................................................................................3

*Endure Indus., Inc. v. Vizient, Inc.*,
164 F.4th 405 (5th Cir. 2026) ...................................................................................................6

*Eytalis v. Nat'l Ass'n of Realtors*,
2025 WL 2054094 (N.D. Tex. June 9, 2025) ...........................................................................8

*Harris v. Wal-Mart Stores Tex., LLC*,
2020 WL 4726757 (S.D. Tex. May 6, 2020).............................................................................9

*Le v. Zuffa, LLC*,
216 F. Supp. 3d 1154 (D. Nev. 2016).......................................................................................2

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) .................................................................................................6

*Paddock Publ'ns, Inc. v. Chi. Trib. Co.*,
1995 WL 632031 (N.D. Ill. Oct. 25, 1995)..............................................................................3

*PSKS, Inc. v. Leegin Creative Leather Prods.*,
615 F.3d 412 (5th Cir. 2010) ..................................................................................................10

*Roland Mach. Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) ................................................................................4

*Rx Sols., Inc. v. Caremark, LLC*,
164 F.4th 436 (5th Cir. 2026) ...............................................................................6

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
2008 WL 199567 (E.D. Mo. Jan. 22, 2008) .........................................................10

*Standard Oil Co. of Cal. v. United States*,
337 U.S. 293 (1949)..............................................................................................3

*Star Tobacco Inc. v. Darilek*,
298 F. Supp. 2d 436 (E.D. Tex. 2003)...................................................................6

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961)..............................................................................................4

*Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*,
2015 WL 6994438 (W.D. Tex. Oct. 15, 2015).......................................................5

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965)..............................................................................................6

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012)..................................................................................4

**Statutes**

15 U.S.C. § 1...............................................................................................2, 4, 10

15 U.S.C. § 14.....................................................................................2, 4, 5, 6, 10

21 U.S.C. § 353a(a).................................................................................................9

In their Motion to Dismiss (ECF No. 42 ("Mot.")), the Novo Nordisk defendants ("Novo Nordisk") identified the key allegations and omissions in the First Amended Complaint (ECF No. 41 ("FAC")) that warrant dismissal of the claims asserted against Novo Nordisk. In particular, the FAC alleges that (i) Novo Nordisk's agreements with telehealth providers ("THPs") foreclosed 35% of Strive's proposed GLP-1 Weight Loss Cash Market; (ii) Novo Nordisk has a 35% share (and declining) of that alleged market; (iii) Novo Nordisk does not have agreements with all THPs; and (iv) ~50% of the prescriptions in that alleged market are not associated with THPs. These allegations on their face mean that Strive cannot plausibly allege required elements of its claims, including exclusive dealing, substantial foreclosure, market power, and anticompetitive effects.

The FAC's omissions are equally damning. In particular, the FAC does ***not*** allege that (i) Strive offers any FDA-approved medicines that compete with Novo Nordisk's; (ii) Strive has ever done business with any THP that has an alleged agreement with Novo Nordisk; or (iii) Strive lost a contract, prescription, sale, or dollar of revenue as a result of the alleged agreements. These omissions mean Strive cannot plausibly allege a required element of its claims, antitrust injury.

Rather than point to allegations from which the Court may draw plausible inferences about the allegedly anticompetitive nature of Novo Nordisk's agreements or their alleged impact on Strive's business (the latter of which is entirely within Strive's knowledge), Strive's Opposition (ECF No. 49 ("Opp.")) ignores the 12(b)(6) pleading standard, relies on conclusory allegations, and makes arguments that flatly contradict its own allegations. In the end, nothing in Strive's Opposition saves its claims against Novo Nordisk.

## ARGUMENT

### I.    STRIVE FAILS TO PLAUSIBLY ALLEGE EXCLUSIVE DEALING.

Strive ignores the controlling Fifth Circuit law, cited by Novo Nordisk, that exclusive dealing occurs when a buyer agrees to "purchase its requirements of a commodity exclusively from

a particular seller." Mot. 9 (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002)). Instead of identifying terms that required THPs to deal only with Novo Nordisk, Strive points to allegations that explicitly concede that the alleged agreements allow THPs to purchase from other GLP-1 suppliers. FAC ¶¶ 113-116, 119-120, 124. And Strive does not respond to, let alone dispute, the argument that, at most, the FAC merely supports an inference that the agreements required THPs to agree not to work with compounders that engage in "illegal mass compounding [or] deceptive marketing." *Compare* Mot. 10 (citing FAC ¶ 124) *with* Opp. 2-4.

Strive's Opposition mischaracterizes Novo Nordisk's argument and points to irrelevant allegations. *First*, Novo Nordisk did not argue that an agreement must "foreclose every competitor from working through a particular distribution channel." Opp. 3 (emphasis omitted). Novo Nordisk, rather, pointed out that Strive has failed to allege that Novo Nordisk's agreements are exclusive at all, and in fact, the FAC alleges the contrary. Mot. 9-10. *Second*, Strive does not "bolster" its exclusive dealing claims by pointing to passing, conclusory allegations that Novo Nordisk "punished" THPs and "threatened" prescribers. Opp. 11-12. Strive's claims are based on Section 1 of the Sherman Act and Section 3 of the Clayton Act, resting solely on the alleged unlawful agreements, FAC ¶¶ 253-263, not any "additional restrictive conduct" (Opp. 1). Thus, Strive's reliance (Opp. 11) on *Le v. Zuffa, LLC* is misplaced because Strive (unlike the plaintiff there) does not allege a Section 2 claim based on an anticompetitive scheme to monopolize a relevant market. *See* 216 F. Supp. 3d 1154, 1168 (D. Nev. 2016). *Third*, Strive does not allege that any threat elicited the desired conduct—a requirement for a plaintiff challenging an agreement based on a "threat-and-accession theory." *See BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 525-26 (5th Cir. 2022) (affirming dismissal of Section 1 claim).

## II.    STRIVE FAILS TO PLAUSIBLY ALLEGE SUBSTANTIAL FORECLOSURE.

Strive does not dispute that its claims require well-pled allegations that Novo Nordisk's

alleged agreements substantially foreclosed a relevant market and that courts typically require allegations of 40-50% foreclosure. Opp. 12-13. Strive's excuses for not meeting the standard fail.

*First*, Strive asks the Court to focus on the "cumulative effect" of Novo Nordisk's and Lilly's alleged agreements (Opp. 12)—an implicit concession that the alleged foreclosure as to Novo Nordisk is insufficient standing alone. But this argument fails as a matter of law because Strive does not allege a conspiracy between Novo Nordisk and Lilly. Strive's primary authority, *Standard Oil Co. of Cal. v. United States*, 337 U.S. 293, 314 (1949), "does not authorize a court to consider the aggregate effects of competitors' exclusive contracts . . . in the absence of a conspiracy between the competitors." *Paddock Publ'ns, Inc. v. Chi. Trib. Co.*, 1995 WL 632031, at *5 (N.D. Ill. Oct. 25, 1995), *aff'd*, 103 F.3d 42 (7th Cir. 1996); *see also Am. Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12507645, at *2 (N.D. Tex. Feb. 28, 2012) (plaintiff cannot "point[] to several discrete vertical contracts . . . that only foreclose a substantial share of the market when viewed in the aggregate"); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 210 (4th Cir. 2002) ("[T]he district court correctly determined that it could not consider the cumulative harm of Microsoft's agreements with all OEMs but instead was required to consider—individually—Microsoft's agreements with Compaq and Dell to evaluate each agreement's potential for anticompetitive effects."); *Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 582 F. Supp. 1332, 1335 (E.D. Mich. 1984) (the "context where everyone else is also doing it" was irrelevant to exclusive dealing claims absent allegation of horizontal conspiracy).

*Second*, Novo Nordisk does not have an "overly formalistic" focus on the foreclosure percentage. Opp. 13. Strive alleges no facts to support its calculation of "at least 35%" market foreclosure, and does not even attempt to explain how a 35% ***foreclosure*** share is plausible when Novo Nordisk allegedly had a 35% ***market*** share and its THP agreements do not account for all of

Novo Nordisk's cash sales. Mot. 11; *cf.* ECF No. 48 at 10 (relying on Lilly's market share to establish plausibility of foreclosure share). *See BRFHH Shreveport*, 49 F.4th at 531 (conclusory assertions of market foreclosure did not "tell a coherent story about how the arrangement prevented [plaintiff] from providing healthcare services to any portion of the market"). And Novo Nordisk's opening brief explained that the qualitative factors relevant to foreclosure also support dismissal. Mot. 10 (citing *BNI Franchising, LLC v. Network for Action Int'l, LLC*, 2026 WL 818331, at *18 (S.D. Tex. Mar. 24, 2026)).[1] Strive pleads the existence of alternative methods of distribution[2] and easily terminable contracts (Mot. 11-12)—undermining any inference that the alleged 35% foreclosure is substantial.[3] Indeed, Strive's own cited case—*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)—supports Novo Nordisk. There, the court found the contractual restrictions unlawful where the agreements had five-year terms and included penalties for termination. *See id.* at 265-66, 286-88. Strive makes no similar allegations here.

*Third*, courts do not apply different standards to Section 1 and Section 3 claims (Opp. 12), but instead regularly evaluate these claims together using the same standards, including in the cases that Strive cites. *See, e.g.*, *id.* at 269 n.9, 281 (applying same framework to exclusive dealing claims under Section 1 and Section 3); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 393 (7th Cir. 1984) (Posner, J.) (exclusive-dealing claims under Section 1 and Section 3 "will be

---

[1] Strive's criticism of *BNI Franchising* (Opp. 19) misses the point. While that case involved a Section 2 claim, the court began its analysis with *Tampa Electric*, which governs exclusive dealing claims under both statutes. *See BNI Franchising*, 2026 WL 818331, at *18.

[2] Strive alleges that ~50% of prescriptions in the alleged market are associated with "other prescription channels" besides THPs. FAC ¶ 129.

[3] Strive's argument that the FDA approval process is a "barrier to entry" (Opp. 8) is at odds with its claim that it does **not** need FDA approval to compound GLP-1 medications. *See, e.g.*, FAC ¶¶ 59-61 (distinguishing compounded medications from "FDA approved medications"). Strive's allegations thus make it implausible that FDA approval is a barrier to entry to a hypothesized market in which Strive competes with Novo Nordisk. *See, e.g.*, *id.* ¶ 213.

judged" under same standard).

*Finally*, even if Strive were correct that some different "incipiency" standard applies to its Section 3 claim that would consider additional future effects of Novo Nordisk's contracts (Opp. 18), such a standard would not help Strive here. Strive alleges that Novo Nordisk has 35% of the alleged GLP-1 Weight Loss Cash Market and foreclosed 35% of that market. Thus, under the FAC's own allegations, Novo Nordisk cannot achieve ***additional*** foreclosure in the future, especially given its alleged declining market share.[4] And the FAC makes no allegations regarding future actions or market conditions. *Universal Hospital Services, Inc. v. Hill-Rom Holdings, Inc.*, 2015 WL 6994438 (W.D. Tex. Oct. 15, 2015), is thus inapposite because the plaintiff there (unlike here) alleged that "the likely future impact" of defendant's conduct would "quickly foreclose an even greater percentage" of the relevant markets. *Id.* at *15.

### III.   STRIVE FAILS TO PLAUSIBLY ALLEGE THAT THE GLP-1 WEIGHT LOSS CASH MARKET IS A PROPER RELEVANT MARKET.

Strive's claim of substantial foreclosure in the alleged GLP-1 Weight Loss Cash Market fails for the further reason that the FAC does not plausibly plead a proper antitrust market.[5] Though Strive hopes the Court will view market definition as a fact question (Opp. 5), the Fifth Circuit requires plaintiffs claiming substantial foreclosure to allege a properly defined relevant market at the pleading stage and regularly affirms dismissal of complaints that fail to do so. *See, e.g., Apani*,

---

[4] Strive conflates foreclosure share and market share in order to invent a contradiction in Novo Nordisk's arguments. Opp. 18. Courts generally infer market power from a ***market share*** of greater than 50%, *see* Mot. 19, but courts require a ***foreclosure share*** of 40-50% to support an exclusive dealing claim, *see* Mot. 10-11. Strive conflates these concepts in its analysis of *Universal Hospital*. *See* Opp. 18 (referring to foreclosure share (12-15%) as market share).

[5] Strive's argument that Novo Nordisk "concedes the legal sufficiency" of another market it alleges (Opp. 4 n.2) is puzzling because Strive's claims are based entirely on the GLP-1 Weight Loss Cash Market. Strive amended its complaint to ***remove*** claims based on the broader GLP-1 Weight Loss Market. *Compare* FAC ¶¶ 253-263 *with* ECF No. 1 ¶¶ 234-239. More broadly, Novo Nordisk's 12(b)(6) motion is a challenge of the sufficiency of the allegations, not an answer to the FAC.

300 F.3d at 628; *Rx Sols., Inc. v. Caremark, LLC*, 164 F.4th 436, 443 (5th Cir. 2026). This is not a formalistic or technical issue: "[w]ithout a definition of [the] market there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965); *see also Key v. Qualcomm Inc.*, 129 F.4th 1129, 1145 (9th Cir. 2025) ("Without delineating the market, no factfinder can logically find that any part— much less a substantial portion—of such market has been foreclosed." (citation omitted)); *Star Tobacco Inc. v. Darilek*, 298 F. Supp. 2d 436, 447 (E.D. Tex. 2003) (similar).

The FAC does not define the GLP-1 Weight Loss Cash Market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Apani*, 300 F.3d at 628. That rule is not Novo Nordisk's "suggestion" (Opp. 5)—it is black letter antitrust law that applies to any proposed market or submarket. *See, e.g.*, *Endure Indus., Inc. v. Vizient, Inc.*, 164 F.4th 405, 412 (5th Cir. 2026) (quoting *Apani*, 300 F.3d at 628); *id.* at 417 (applying criteria to proposed submarket). Strive does not engage at all with Novo Nordisk's principal argument as to that standard—that when a seller claims it has been excluded from a market, the market must be defined from the perspective of the seller. Mot. 13-14. Here, Strive is able to sell to both cash and insured customers. Thus, Strive's response—that a ***patient*** cannot switch between payment methods (Opp. 5-6)—is legally irrelevant because the focus is on the ***seller***, not which customers can buy from the seller. Mot. 13-14 (collecting cases). The FAC contains no allegation that all of Strive's sales are from cash customers. Strive's effort to gerrymander around insured patients thus fails.

## IV.   STRIVE FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY OR ARTICLE III STANDING.

### A.   Strive Fails to Plausibly Allege That It Competes with Novo Nordisk.[6]

Strive does not dispute the core issue underpinning its failure to plead antitrust injury: "[b]y

---

[6] This failure is also an independent basis to dismiss Strive's Section 3 claim. *See* Opp. 3-4

its own admission and under federal law, Strive cannot lawfully mass compound semaglutide drugs except for those rare patients whose medical needs cannot be met by an FDA approved drug." Mot. 15. Nor could it, given the extensive allegations in the FAC of zero overlap between prescriptions for FDA-approved GLP-1 medications and prescriptions for personalized compounded GLP-1 products:

- "Strive compounded GLP-1 medicines that were personalized for individual patients according to a medical practitioner's prescription—medicines that Eli Lilly and Novo Nordisk did not offer." FAC ¶ 4.

- "In this regulatory context, for patients with unique needs that make FDA approved medications unsuitable (allergies, aversion to methods of delivery, etc.), compounded drugs have been called 'a godsend.'" *Id.* ¶ 60.

- "Licensed healthcare professionals determine when and whether a patient's particular circumstances create a need for compounded medicine. If, in his or her medical judgment, a licensed prescriber determines that an FDA approved drug does not suit the medical needs of a patient, that doctor can prescribe compounded medicine." *Id.* ¶ 61.

- "Patients cannot change the dosage of branded GLP-1 drugs or combine them with other drugs because they are sold only in pre-filled injection pens or single-size pills. Compounding is the only way for patients with non-standard dosages or combination-product requirements to obtain GLP-1 drugs that meet their needs." *Id.* ¶ 75.[7]

Instead of addressing its own allegations, Strive responds to strawmen. Novo Nordisk did not argue that the GLP-1 shortage eliminated demand for "compounded personalized drugs" or that products must be "identical" to compete. Opp. 15. Novo Nordisk focused only on the legal standard—reasonable interchangeability—and demonstrated that the FAC's allegations and the FDA regulatory regime as a matter of law foreclose interchangeability between an FDA-approved GLP-1 medication and a personalized compounded GLP-1 product. Mot. 15-16. Contrary to

---

(admitting that an agreement must prohibit a buyer from dealing in the goods of "a competitor").

[7] *See also* FAC ¶¶ 54 ("Compounding pharmacies are specialized pharmacies that prepare custom medications based on individual patient needs."), 62 ("The FDA permits compounding pharmacies to dispense drugs when a prescriber determines that a compounded product is necessary for an identified individual patient."), 68 ("compounded drugs do not go through the exact same FDA premarket approval process as branded drugs").

Strive's argument (Opp. 1, 7), an alleged statement by Novo Nordisk's CEO that "compounders took part of our business away" is irrelevant because it relates to the shortage period in early 2025, FAC ¶ 103, when the regulatory regime permitted compounding of exact copies of branded GLP-1 products and not the period after the shortage ended, when Novo Nordisk entered the challenged agreements, *id.* ¶¶ 93, 97, 99, 115. Strive otherwise ignores that demand for purported "personalized" compounded GLP-1 drugs is very limited under the regulatory regime, stating only that compounding is "authorized by law." Opp. 7 n.3. Taken together, Strive has failed to allege that it competes with Novo Nordisk.

### B.    Strive Fails to Plausibly Allege Harm to Itself and to Competition.

Strive's Opposition confirms that the FAC does not allege injury to Strive, as required for antitrust injury and Article III standing. Nowhere does Strive identify a single allegation of a lost sale, prescription, contract, relationship, or opportunity as a result of the alleged agreements. Instead, Strive argues that it is reasonable to infer injury from its pleading impact to "compounding pharmacies, like Strive." Opp. 16.[8] Contrary to Strive's claim, this is not "semantics": Strive never explains why the FAC does not explicitly allege facts—entirely within Strive's knowledge—about the harm it has suffered. *See* Mot. 16-17 & n.6. The Court should not "strain to find inferences" where Strive did not allege facts to support them. *BNI Franchising*, 2026 WL 818331, at *16.[9]

Strive also fails to effectively grapple with the FAC's absence of plausible allegations of harm to competition. Strive falls back on conclusory allegations of "supracompetitive pricing and reduced customer options" (Opp. 17) but ignores its own allegations that competition for GLP-1

---

[8] In its desperate effort to demonstrate that Novo Nordisk harmed it, Strive attributes to Novo Nordisk allegations of alleged statements by Lilly. Opp. 16 (citing FAC ¶ 149, which alleges statements by Lilly, *see id.* ¶¶ 143-148).

[9] Strive's attempt (Opp. 16) to distinguish *Eytalis v. Nat'l Ass'n of Realtors*, 2025 WL 2054094 (N.D. Tex. June 9, 2025), merely emphasizes the FAC's flaws. A plaintiff must plead harm to itself and to competition. Failure to allege either results in dismissal. *See id.* at *4.

8

medications has resulted in lower prices and increased demand and output. Mot. 17-18. Strive's conclusory assertion of reduced "consumer choice" is also implausible because, as described *supra* (§ IV.A), for patients, there is no "choice" to be made between branded GLP-1s and compounded GLP-1s: by statute, compounded GLP-1 products can be prescribed only when a compounded product is ***medically necessary*** for an identified patient. *E.g.*, FAC ¶¶ 61-62; *see also* Mot. 6 (citing 21 U.S.C. § 353a(a)). And summarily pointing to Novo Nordisk's alleged "anticompetitive conduct" (Opp. 17) does not satisfy the separate antitrust injury element of Strive's claims.

## V.      STRIVE FAILS TO PLAUSIBLY ALLEGE ANTICOMPETITIVE EFFECTS.

Strive points only to conclusory allegations—*e.g.*, that "Novo's conduct has adversely affected GLP-1 cash product prices, output, and availability"—as opposed to "direct evidence" of anticompetitive effects. Opp. 18. However, the FAC includes other allegations that contradict the conclusory ones—that Novo Nordisk lowered prices in response to competition, Novo Nordisk and Lilly launched pharmacies, and prescriptions for GLP-1 medications grew substantially. FAC ¶¶ 33-34, 39, 47, 91, 108-109, 111. Allegations of lower prices and increased output doom Strive's assertion of anticompetitive effects. *See, e.g.*, *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 2022 WL 980791, at *6-7 (W.D. Tex. Mar. 31, 2022) (factual allegations contradicted conclusory allegations of anticompetitive effects); *see also Harris v. Wal-Mart Stores Tex., LLC*, 2020 WL 4726757, at *13 (S.D. Tex. May 6, 2020) ("a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true" (citation omitted)).

Strive's arguments on indirect evidence fare no better. Strive does not contest that it alleges that Novo Nordisk has a 35% market share—less than the 50% required. Mot. 19. Instead, Strive argues that 50% is not required to find market power while failing to cite a single case in which an allegation of 35% market share sufficed to survive dismissal. Opp. 8-9. Strive relies on post-discovery decisions that say nothing about the pleading standards to ***allege*** sufficient market power

to support a Section 1 or Section 3 claim. *See id.* at 7-8; *see also PSKS, Inc. v. Leegin Creative Leather Prods.*, 615 F.3d 412, 418-19 (5th Cir. 2010) ("To allege a vertical restraint claim sufficiently, a plaintiff must plausibly allege the defendant's market power.").[10]

Strive tries to avoid the significance of its own pleading of a 35% market share for Novo Nordisk by asking the Court to focus on the allegations about the "duopoly market structure" (Opp. 19) and a time when Novo Nordisk raised prices (Opp. 9) (citing FAC ¶¶ 39-40). Neither allegation helps Strive. Again, absent allegations of coordination, there is no basis to infer that "Novo and Lilly together" did anything. Opp. 19.[11] And Strive's reliance on a time when Novo Nordisk was allegedly able to raise prices is even more puzzling because Strive alleges that occurred **before** Novo Nordisk faced competition from Lilly's GLP-1 medications. FAC ¶ 39 ("Novo Nordisk consistently raised the price of its GLP-1 drugs . . . until it faced competition from Eli Lilly's GLP-1 drugs[.]"). The clear inference from the FAC, then, is that Novo Nordisk lost any ability it may have had before that to raise prices on its medications to supracompetitive levels.

In sum, allegations of Novo Nordisk's 35% (and declining) market share, lower prices, and increased demand and output preclude an inference of anticompetitive effects.[12]

## CONCLUSION

The Court should dismiss Strive's claims against Novo Nordisk with prejudice.

---

[10] The holding in *Quest Diagnostics* that a court "cannot infer market power from a bare assertion of market share" (Opp. 8 (emphasis omitted)) does not help Strive. It means that Strive must allege more than simply Novo Nordisk's market share in order to allow the Court to evaluate whether Novo Nordisk can "raise price profitably by restricting output." 2022 WL 980791, at *7-8.

[11] For the same reason, the allegation of a "duopoly" (Opp. 11) does not allow Strive to combine Defendants' market shares to show market power. *See Se. Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *7 (E.D. Mo. Jan. 22, 2008) ("Plaintiff cannot bootstrap its claims against Tyco by accumulating its market share with that of Bard").

[12] Novo Nordisk did not "invent" allegations of declining market share (Opp. 19 n.4). *See, e.g.*, FAC ¶¶ 32 (showing declines in Novo Nordisk share since May 2024), 191 (Novo Nordisk share 41.7% "as of the third quarter of 2025"), 221 (alleging that Novo Nordisk's market share "has been slightly declining"). These allegations do not support an inference of market power. *See* Mot. 20.

Dated: June 18, 2026

Respectfully submitted,

/s/ Jonathan L. Smith
Randall L. Christian (TX Bar No. 00783826)
Jonathan L. Smith (TX Bar No. 24088436)
BOWMAN & BROOKE LLP
2901 Via Fortuna Drive
Suite 500
Austin, TX 78746
T: (512) 874-3811
Randall.Christian@bowmanandbrooke.com
jonathan.smith@bowmanandbrooke.com

/s/ Andrew D. Lazerow
Andrew D. Lazerow (*pro hac vice*)
Ashley E. Bass (*pro hac vice*)
Henry B. Liu (*pro hac vice*)
Jeffrey Cao (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
T: (202) 662-6000
alazerow@cov.com
abass@cov.com
hliu@cov.com
jcao@cov.com

Kurt Calia (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
T: (650) 632-4700
kcalia@cov.com

*Counsel for Defendants Novo Nordisk Inc. and
Novo Nordisk A/S*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on June 18, 2026, Defendants Novo Nordisk A/S and Novo Nordisk Inc. filed the foregoing Reply Memorandum in Support of Their Motion to Dismiss the First Amended Complaint (ECF No. 42) using the CM/ECF system, which will send notification and a copy of such filing to all counsel of record.

*/s/ Jonathan L. Smtih*
Jonathan L. Smith

*Counsel for Defendants Novo Nordisk Inc. and Novo Nordisk A/S*
