**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| STRIVE SPECIALTIES INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>ELI LILLY & CO.,<br>NOVO NORDISK A/S,<br>and NOVO NORDISK INC.<br><br>*Defendants*. | Case No. 5:26-CV-0155-MA |

**DEFENDANT ELI LILLY AND COMPANY'S OPPOSITION TO**
**MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................1

I. STRIVE CANNOT MEET THE STANDARD FOR RECONSIDERATION ..................1

  A. Strive's Market Definition Arguments Fail ..........................................................2

  B. Strive's Antitrust Injury Arguments Fail Largely For The Same Reasons.............6

II. LEAVE TO AMEND IS UNTIMELY AND FUTILE......................................................7

CONCLUSION.......................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
2011 WL 5403368 (D. Utah Nov. 4, 2011) ....................2

*Celanese Corp. v. Martin K. Eby Constr. Co., Inc.*,
620 F.3d 529 (5th Cir. 2010) ....................2

*Demahy v. Schwarz Pharma, Inc.*,
702 F.3d 177 (5th Cir. 2012) ....................2

*Eli Lilly & Co. v. Revive RX, LLC*,
812 F. Supp. 3d 708 (S.D. Tex. 2025) ....................5

*In re Cyr*,
2020 WL 10056295 (W.D. Tex. July 16, 2020) ....................5

*Johnson v. Stephens*,
617 F. App'x 293 (5th Cir. 2015) ....................8

*Kemp v. G.D. Searle & Co.*,
103 F.3d 405 (5th Cir. 1997) ....................6

*Legate v. Livingston*,
822 F.3d 207 (5th Cir. 2016) ....................8

*Price v. Texas Tech Univ. Health & Scis. Ctr. El Paso*,
784 F. Supp. 3d 944 (W.D. Tex. 2025)....................2

*Rx Sols., Inc. v. Caremark, L.L.C.*,
164 F.4th 436 (5th Cir. 2026) ....................3

*Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563 (5th Cir. 2003) ....................7

*Sinkin v. Pons*,
2014 WL 12488583 (W.D. Tex. Sept. 16, 2014)....................6

*Spears v. McCraw*,
2020 WL 2114386 (W.D. Tex. May 4, 2020) ....................2

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) ....................1

*United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*,
89 F.3d 233 (5th Cir. 1996) ....................................................................................3

*Warren v. Am. Bankers Ins. of Fla.*,
507 F.3d 1239 (10th Cir. 2007) ...............................................................................2

*Young v. Hosemann*,
598 F.3d 184 (5th Cir. 2010) ....................................................................................6

**STATUTES**

21 U.S.C.
§ 353a(a) ......................................................................................................................4
§ 353a(b)(1)(D)............................................................................................................4
§ 353a(b)(2) .................................................................................................................4

**RULES**

Fed. R. Civ. P.
54(b)..............................................................................................................................2
59(e) ..............................................................................................................................2

**OTHER AUTHORITIES**

Alliance for Pharmacy Compounding, *Best Practices for Marketing Compounded Medications* (Oct. 9, 2024), https://a4pc.org/hubfs/PDFs/2024-10_Best-Practices-for-Marketing-Compounded-Drugs.pdf.................................................................3, 4

FDA, *Compounded Drug Products That Are Essentially Copies of a Commercially Available Drug Product Under Section 503A of the Federal Food, Drug, and Cosmetic Act, Guidance for Industry* (Jan. 2018), https://www.fda.gov/media/98973/download...............................................................3, 5

FDA, *FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products* (Jul. 26, 2024), https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded ..........................................................................................................4, 5

Strive Rx, *Tirzepatide/Glycine/B12*,
https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12 ..................................3

## INTRODUCTION

Strive does not meet the standard for reconsideration, "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). This Court's dismissal order adjudicated *all* Strive's claims, so Strive is seeking reconsideration post-judgment. That is permitted only in the rarest of circumstances, such as when there is a manifest error of fact or law. This is not that rare case. It's the opposite: Strive simply recycles arguments this Court already rejected or adds new arguments it could have raised, but failed to, in its opposition to Lilly's motion to dismiss. As for the recycled arguments, this Court correctly held that Strive failed to allege Lilly's FDA-approved medicines compete in the same relevant antitrust market as Strive's compounded drugs. Among other things, that holding relied on Strive's own allegation that a doctor may prescribe compounded drugs only when "an FDA approved drug does not suit the medical needs of a patient." First Amended Complaint, Dkt. No. 41 ¶ 61 (FAC). This Court did not err by crediting Strive's allegations and applying the relevant statutory framework. And as to the new arguments, they are forfeited: a motion for reconsideration is not the appropriate vehicle.

In addition to reconsideration, Strive seeks leave to file a proposed Second Amended Complaint (SAC). But Strive's motion to amend comes too late. Amendment would also be futile because the SAC does not cure the flaws this Court identified nor the complaint's many other deficiencies, including the failure to allege antitrust standing or anticompetitive conduct. For each of these independent reasons, the Court should deny Strive's motion.

## ARGUMENT

### I. STRIVE CANNOT MEET THE STANDARD FOR RECONSIDERATION

A motion for reconsideration "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 479

(brackets and citation omitted). It "cannot be used to raise arguments which could, and should, have been made before the judgment issued and cannot be used to argue a case under a new legal theory." *Celanese Corp. v. Martin K. Eby Constr. Co., Inc.*, 620 F.3d 529, 531 (5th Cir. 2010); *see Price v. Texas Tech Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 951 (W.D. Tex. 2025).

Strive comes nowhere close to meeting this standard.[1] Strive does not cite "an intervening change in the controlling law" or "newly discovered evidence that was previously unavailable." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). The only ground for relief Strive could even possibly invoke is the need "to correct a manifest error of law or fact." *Id.* But Strive identifies no error, much less a manifest one, because this Court's decision properly relied on Strive's *own* accounting of the facts and correctly applied the law.

### A. Strive's Market Definition Arguments Fail

The Court provided two independent reasons for concluding that Strive "fail[ed] to plausibly allege the necessary legally cognizable product market to bring its antitrust claims." Opinion and Order, Dkt. No. 55 at 12 (Op.). *First*, the Court concluded that "Strive cannot plausibly allege that its products are interchangeable with Defendants' branded GLP-1 medications" because "compound GLP-1 medications are only available to patients that cannot use branded GLP-1 medications." Op. 11. *Second*, the Court concluded that Strive failed to allege

---

[1] This motion is governed by the Rule 59(e) standard. Strive's motion also invokes Rule 54(b), but that rule governs orders that "adjudicate[] fewer than all the claims." Fed. R. Civ. P. 54(b). The Court's order dismissed all Strive's claims with prejudice, and courts have consistently held that Rule 59(e)'s "more stringent" standard governs reconsideration of such orders even before a formal final judgment is entered. *Spears v. McCraw*, 2020 WL 2114386, at *3 (W.D. Tex. May 4, 2020); *see Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1244 (10th Cir. 2007); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 2011 WL 5403368, at *2 (D. Utah Nov. 4, 2011). Strive cites no case to the contrary. Regardless, Strive's motion fails under any standard.

interchangeability "with reference to . . . cross-elasticity of demand" (as required under Fifth Circuit precedent) and that Strive's assertions of "competitive pressure" were "conclusory." Op. 11-12 (quoting *Rx Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 443 (5th Cir. 2026)), FAC ¶¶ 4, 224(f). Both conclusions are correct, and either is a proper basis to dismiss.

The Court's interchangeability holding is correct: it rests on Strive's *own allegations*. For example, the FAC alleges that a doctor can prescribe compounded drugs when "an FDA approved drug does not suit the medical needs of a patient." FAC ¶ 61. That factual allegation was no mistake: Strive's own website provides that "[c]ompounded drugs are intended for patients whose prescriber has determined their *medical needs* are not met by an available FDA-approved drug."[2] Thus, this case is not about patients choosing between products like iPhones and Android devices with "different capabilities." Mot. for Reconsideration, Dkt. No. 56 at 8 (Mot.). It is about two products that—as Strive's own allegations admit—are not legally interchangeable.

The Court's cross-elasticity of demand holding is also correct: it rests on black-letter antitrust law. Cross-elasticity of demand "measures consumers' propensity to switch from one product to another, similar product *when relative prices change*." *United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 89 F.3d 233, 236 n.3 (5th Cir. 1996) (emphasis added). Strive has never plausibly alleged that either consumers or prescribers can legally choose between Lilly's FDA-approved medicines and compounded drugs *based on differences in price*. Indeed, the FDA guidance cited in Strive's motion (at 5) says that "a lower price" is ***not*** a lawful basis for prescribing a compounded drug under Section 503A. *See* FDA, *Compounded Drug Products That Are Essentially Copies of a Commercially Available Drug Product Under Section 503A of the*

[2] Strive Rx, *Tirzepatide/Glycine/B12*, https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12 (under "disclaimer") (emphasis added).

*Federal Food, Drug, and Cosmetic Act, Guidance for Industry* at 8-9 (Jan. 2018); *see also* Alliance for Pharmacy Compounding, *Best Practices for Marketing Compounded Medications* (Oct. 9, 2024) ("FDA's Guidance . . . states that price is not a valid reason to compound a copy of an FDA-approved drug").[3] Strive's continued reliance on "competitive pressure" and price differences between FDA-approved medicines and compounded drugs does not close the gap. "[A] price disparity does not imply cross-elasticity between two products unless consumers can substitute one for the other in response to that disparity." Op. 12.

Unable to grapple with its own allegations and binding precedent, Strive argues that the Court's reading of Section 503A—that compounded drugs may be prescribed only when they are "a matter of medical necessity" based on a patient's specific medical needs—constitutes an error that requires reconsideration because it "contradicts both the text" of the Food, Drug, and Cosmetic Act (FDCA) and the FAC. Mot. 1. But the parties already briefed these issues, and the Court's analysis was consistent with both. Start with the text: no compounded drug may be dispensed unless "the prescribing practitioner" has adequately documented that the compounded drug is "*necessary* for the identified patient." 21 U.S.C. § 353a(a) (emphasis added). Compounded drugs that contain the same active ingredient as an approved medicine are subject to the further condition that the compounded drug must contain a change that makes a "significant difference" for the identified patient versus the approved drug. *Id.* § 353a(b)(2). Those two statutory requirements—necessity and difference—are why the operative complaint conceded that compounded drugs may be prescribed only when a branded product is unsuitable for a patient. S*ee* FAC ¶¶ 60-61. That is what the text of Section 503A requires. *See* 21 U.S.C. § 353a(a), (b)(1)(D), (b)(2); *see also* FDA,

---

[3] https://www.fda.gov/media/98973/download; https://a4pc.org/hubfs/PDFs/2024-10_Best-Practices-for-Marketing-Compounded-Drugs.pdf.

*FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products* (Jul. 26, 2024)[4] ("Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."); FDA, *Compounded Drug Products*, *supra*, at 3 (explaining that compounded drugs are permitted only for "identified individual patients whose medical needs cannot be met by commercially available drug products").

Strive argues that "even if Section 503A were limited to circumstances in which a physician determines that a compounded medication is 'necessary' for an identified patient, that would not resolve the antitrust question" because Section 503A "does not define antitrust markets." Mot. 6. This misses the point. The Court did not hold that Section 503A "defines" antitrust markets. Rather, it correctly held that Section 503A defines when it is *legal* to dispense compounded drugs, and those legal constraints dictate that compounded drugs cannot be sold as substitutes for FDA-approved medicines unless they are prescribed to patients for whom compounded drugs are necessary. *See* Mot. to Dismiss, Dkt. No. 43 at 11-13 (MTD); Reply ISO Mot. to Dismiss, Dkt. No. 51 51 at 3-4 (MTD Reply).

Strive also argues that even if its products cannot lawfully compete with Lilly's under ordinary circumstances, some of the alleged misconduct occurred during a shortage "so Section 503A . . . cannot be grounds for dismissal." Mot. 4-5 & n.2. But Strive was never allowed to produce copies of Lilly's medicines under Section 503A. *See Eli Lilly & Co. v. Revive RX, LLC*, 812 F. Supp. 3d 708, 749-50 (S.D. Tex. 2025) ("A drug shortage does not lift the regular-or-inordinate amount restriction for 503A compounders."). And regardless, Strive did not make that

---

[4] https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

argument in its opposition to the motion to dismiss and has forfeited it. *See, e.g.*, *In re Cyr*, 2020 WL 10056295, at *2 (W.D. Tex. July 16, 2020) (courts "expect[]" litigants "to present their strongest case when the matter is first considered"); *see generally* Opp. to Mot. to Dismiss, Dkt. No. 48 (MTD Opp.).

Strive's proposed SAC attempts to rewrite the statute by alleging that Section 503A requires only "a determination by a patient's treating physician that a compounded drug *best suits* that particular patient's medical needs." Proposed SAC ¶ 65 (emphasis added). But Strive's allegation is incompatible with the statutory text. *See, e.g.*, *Sinkin v. Pons*, 2014 WL 12488583, at *6 (W.D. Tex. Sept. 16, 2014) (explaining that while the Court must credit non-conclusory, factual allegations at the complaint stage, "the Court need not accord the same deference to legal conclusions asserted in the complaint"); *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) ("Questions of statutory interpretation are questions of law."); *Young v. Hosemann*, 598 F.3d 184, 187 (5th Cir. 2010) (affirming dismissal based on statutory interpretation).

### B. Strive's Antitrust Injury Arguments Fail Largely For The Same Reasons

"Although Strive's failure to plead a relevant market [was] independently dispositive," this Court concluded that Strive's complaint should be dismissed for additional reasons: Strive's antitrust injury allegations "rest on an implausible theory of competition" and "Strive's alleged injuries largely reflect harm to its own ability to compete, not to competition itself." Op. 12-14.

The first point, as Strive acknowledges, "rests on the same premise underlying [the Court's] market-definition ruling." Mot. 15. That ruling was correct. *See supra* at 2-6.

On the second point, Strive's only argument is its continued disagreement with the Court's market-definition ruling. *See* Mot. 16 ("Once the premise that compounded and branded GLP-1 products cannot compete is set aside, the FAC alleges far more harm to a disappointed rival"). Again, that ruling was correct so Strive's argument should be rejected. Regardless, the Court's

conclusion that Strive failed to allege an injury to competition did not rest solely on its market-definition ruling. Instead, the Court concluded that "Strive's assertion that Defendants foreclosed distribution channels, denied it access to patients, reduced demand for its products, increased scaling costs, or otherwise impeded Strive's participation in the market describe injury to Strive as a market participant, not to the competitive process." Op. 13. Strive does not respond to that independent deficiency, nor can it.

## II. LEAVE TO AMEND IS UNTIMELY AND FUTILE

Perhaps recognizing that it does not meet the high bar for reconsideration, Strive requests, "[a]t a minimum" leave to amend. Mot. 4. But leave to amend is not appropriate where the Court has already disposed of all Strive's claims with prejudice. *See, e.g.*, *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 569 (5th Cir. 2003). In any event, Strive already had one chance to amend its complaint and another would not help.[5]

*First*, Strive already "receiv[ed] at least one meaningful opportunity to cure pleading deficiencies before dismissal with prejudice." Mot. 3, 17-18. Strive amended its original complaint, and it could have sought leave to amend again when Lilly moved to dismiss with prejudice but did not. Strive's request now—after judgment, in a motion for reconsideration—is too little, too late. *See, e.g.*, *Schiller*, 342 F.3d at 569 (affirming denial of Rule 59(e) motion and stating "we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling").

---

[5] Strive argues that Rule 15(a) controls here. That is wrong. Because this Court entered an order disposing of all Strive's claims, Rule 59(e) controls. *See supra* at 1-2 & n.1. Regardless, Strive's request for leave fails under either standard.

*Second*, Strive's many pleading failures were not "identified for the first time in the dismissal order." Mot. 18. Lilly addressed all of them in its motion to dismiss. Take Strive's point about "the distinction under Section 503A between patient-specific prescribing decisions" and "significant difference[]" determinations. Mot. 17-18. Lilly raised this exact issue. *See, e.g.*, MTD 3, 12-13. Strive responded. MTD Opp. 16. The Court considered and correctly rejected Strive's arguments. Op. 11. Strive did not lack notice of the deficiencies in its pleadings, it lacked an answer to them.

*Third*, the "new" material in Strive's proposed amendment—a 2026 poll and a January 2026 statement by Novo Nordisk's chief executive—was available well before the Court's order, proposed SAC ¶¶ 76-77, and does not resolve the fatal deficiencies in Strive's complaint. Neither speaks to whether compounded drugs and FDA-approved branded medicines can lawfully compete under the FDCA.

*Fourth*, a district court should not grant a futile motion to amend. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016); *Johnson v. Stephens*, 617 F. App'x 293, 301 (5th Cir. 2015) ("[I]f the district court determines that amendment would be futile, . . . leave to amend should be denied."). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate*, 822 F.3d at 211 (citation omitted). The proposed SAC would not cure the market definition and antitrust injury deficiencies recognized by the Court for the reasons set forth above. Indeed, the proposed SAC re-pleads the FAC's list of alleged competitive harms nearly verbatim. *Compare* Proposed SAC ¶ 230(a)-(h), *with* FAC ¶ 224(a)-(h). Nor does the proposed SAC address the vast majority of other reasons Strive's operative complaint fails to state a claim, including: Strive's failure to allege antitrust standing, MTD 9-11; MTD Reply 1-3; and Strive's failure to allege any

anticompetitive conduct, MTD 14-20; MTD Reply 5-10. Each would independently support dismissal, so any amendment that does not cure those grounds would be futile.

## CONCLUSION

For the foregoing reasons, Strive's motion for reconsideration should be denied and this Court should issue a separate order entering final judgment.

Dated: September 4, 2026

Respectfully submitted,

/s/ David Marriott
David Marriott (admitted *pro hac vice*)
New York Bar No. 2682565
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
david.marriott@lw.com

Amanda P. Reeves (admitted *pro hac vice*)
District of Columbia Bar No. 496338
Melissa Arbus Sherry (admitted *pro hac vice*)
District of Columbia Bar No. 497787
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com
melissa.sherry@lw.com

Elyse M. Greenwald (admitted *pro hac vice*)
California Bar No. 268050
LATHAM & WATKINS LLP
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
elyse.greenwald@lw.com

Allison M. Gorsuch (admitted *pro hac vice*)
Illinois Bar No. 6329734
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7684
Facsimile: (312) 993-9767
allison.gorsuch@lw.com

Nicholas L. Schlossman
Texas Bar No. 24093117

LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (737) 910-7314
Facsimile: (737) 910-7301
nicholas.schlossman@lw.com

*Counsel for Defendant*
*Eli Lilly and Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September 2026, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service.

*/s/ David Marriott*
David Marriott