**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

STRIVE SPECIALTIES INC.,

*Plaintiff*,

v.

ELI LILLY & CO.,
NOVO NORDISK A/S, and
NOVO NORDISK INC.

*Defendants*.

Case No. 5:26-cv-00155-MA

**NOVO NORDISK DEFENDANTS' OPPOSITION TO PLAINTIFF STRIVE SPECIALTIES INC.'S MOTION TO ALTER OR AMEND THE JUDGMENT AND FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND (DKT. 56)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

PROCEDURAL BACKGROUND ........ 2

ARGUMENT ........ 3

I. The Court Should Not Reconsider Its Order. ........ 3

A. Strive's New Interpretation of Section 353a Is Wrong as a Matter of Law. ........ 5

1. The Statute and Statutory Scheme Support the Court's Interpretation. ........ 5

2. FDA Confirms the Court's Interpretation. ........ 8

3. Strive's Own Allegations and Public Statements Further Confirm the Court's Interpretation. ........ 9

B. Strive's Recycled Product Market Arguments Are Still Wrong. ........ 10

C. Strive's Remaining Arguments for Reconsideration Fail. ........ 14

II. The Court Should Reject the Unauthorized Proposed Amendment. ........ 16

A. Strive's Proposed Amendment Is Futile. ........ 17

B. Strive's Proposed Amendment Is Unduly Delayed. ........ 18

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Mumit v. Alexandria Hyundai, LLC*,
896 F.3d 278 (4th Cir. 2018) ....................20

*Abigail Alliance v. von Eschenbach*,
495 F.3d 695 (D.C. Cir. 2007) ....................5

*ALD Social LLC v. Google LLC*,
2023 WL 11915670 (W.D. Tex. July 25, 2023) ....................20

*Apani Sw., Inc. v. Coca-Cola Enters.*,
300 F.3d 620 (5th Cir. 2002) ....................12, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................17

*Austin Legal Video, LLC v. Deposition Sols., LLC*,
2023 WL 9107726 (W.D. Tex. Nov. 16, 2023) ....................12

*Babanov v. Velasco*,
2010 WL 11646530 (S.D. Tex. June 22, 2010) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................17

*Brooks v. Raymond Dugat Co.*,
336 F.3d 360 (5th Cir. 2003) ....................4

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ....................14

*Cabral v. Brennan*,
853 F.3d 763 (5th Cir. 2017) ....................4

*In re Canadian Import Antitrust Litig.*,
470 F.3d 785 (8th Cir. 2006) ....................12

*Christianson v. Colt Indus. Op. Corp.*,
486 U.S. 800 (1988) ....................2

*Commissioner v. Clark*,
489 U.S. 726 (1989) ....................8

*United States ex rel. Conyers v. Kellogg Brown & Root, Inc.*,
175 F.4th 569 (5th Cir. 2026) ....................7

*Endure Indus., Inc. v. Vizient Inc.*,
164 F.4th 405 (5th Cir. 2026) ....................................................................................12

*Farmers Texas Cnty. Mut. Ins. Co. v. 1st Choice Acc. & Inj. LLC*,
168 F.4th 271 (5th Cir. 2026) ....................................................................17, 18, 19

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................................................17

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .....................................................................................19

*Guy v. Crown Equip. Corp.*,
394 F.3d 320 (5th Cir. 2004) .......................................................................................4

*Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n*,
851 F. App'x 461 (5th Cir. 2021) .................................................................................6

*Lozano v. Ocwen Fed. Bank, FSB*,
489 F.3d 636 (5th Cir. 2007) .....................................................................................18

*Lyles v. Medtronic Sofamor Danek, USA, Inc.*,
871 F.3d 305 (5th Cir. 2017) ...............................................................................4, 5, 10

*Mack v. RPC, Inc.*,
439 F. Supp. 3d 897 (E.D. Tex. 2020)........................................................................17

*Maracich v. Spears*,
570 U.S. 48 (2013)........................................................................................................8

*Marucci Sports, LLC v. NCAA*,
751 F.3d 368 (5th Cir. 2014) .....................................................................................17

*Mason v. Fremont Inv. & Loan*,
671 F. App'x 880 (5th Cir. 2016) ...............................................................................11

*Med. Ctr. Pharm. v. Mukasey*,
536 F.3d 383 (5th Cir. 2008) ....................................................................................5, 6

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)....................................................................................................13

*Primerica Life Ins. Co. v. Pawlik*,
2021 WL 5197487 (W.D. Tex. July 1, 2021) ..............................................................4

*ProMedica Health Sys., Inc. v. FTC*,
749 F.3d 559 (6th Cir. 2014) .....................................................................................14

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
615 F.3d 412 (5th Cir. 2010) ....................11

*Rodriguez-Meza v. Venegas*,
2019 WL 13150014 (W.D. Tex. Jan. 17, 2019) ....................20

*Rosenblatt v. United Way of Greater Houston*,
607 F.3d 413 (5th Cir. 2010) ....................19

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) ....................20

*Rx Sols., Inc. v. Caremark, LLC*,
164 F.4th 436 (5th Cir. 2026) ....................12, 15

*Sabal Ltd. LP v. Deutsche Bank AG*,
2016 WL 6462300 (W.D. Tex. Nov. 1, 2016) ....................4

*Salomon v. Wells Fargo Bank, N.A.*,
2010 WL 2900783 (W.D. Tex. July 22, 2010) ....................4, 10

*Schiller v. Physicians Res. Grp.*,
342 F.3d 563 (5th Cir. 2003) ....................11

*Superior Sales W., Inc. v. Gonzalez*,
2020 WL 520968 (W.D. Tex. Jan. 9, 2020) ....................4

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) ....................4, 11

*Texas v. U.S. Envtl. Prot. Agency*,
829 F.3d 405 (5th Cir. 2016) ....................8

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ....................6, 8

*Waltman v. Int'l Paper Co.*,
875 F.2d 468 (5th Cir. 1989) ....................4, 11

*In re Wellbutrin XL Antitrust Litig.*,
868 F.3d 132 (3d Cir. 2017) ....................12

*Whitaker v. City of Houston*,
963 F.2d 831 (5th Cir. 1992) ....................16

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ....................8

*Wilson v. Tessmer Law Firm, PLLC*,
2021 WL 7448751 (W.D. Tex. Mar. 4, 2021) ....5

**Statutes**

21 U.S.C. § 353a .... *passim*

21 U.S.C. § 353b ....14

21 U.S.C. § 355 ....6

**Rules**

Fed. R. Civ. P. 12(b)(6) ....9

Fed. R. Civ. P. 15(a) ....16, 17

Fed. R. Civ. P. 54(b) ....4

Fed. R. Civ. P. 59(e) ....4

**Legislative History**

143 Cong. Rec. S9811 (1997) (statement of Senator Kennedy) ....8

S. Rep. 105-43, 1997 WL 394244 ....8

**Other Authorities**

FDA, *Compounded Drug Products That Are Essentially Copies of a Commercially Available Drug Product Under Section 503A of the Federal Food, Drug, and Cosmetic Act*, https://www.fda.gov/media/98973/download. ....9

FDA, *Compounding and the FDA: Questions and Answers*, https://www.fda.gov/drugs/human-drug-compounding/ compounding-and-fda-questions-and-answers ....9

FDA, *Drug Compounding*, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding (last updated June 15, 2026) ....13

FDA, *FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss*, https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss ....9

FDA, *Guidance for Industry on Hospital and Health System Compounding under Section 503A of the Federal Food, Drug, and Cosmetic Act*, https://www.fda.gov/media/97353/download?attachment ....9

Ltr. from Matthew J. Lash to Humayun J. Chaudhry (Aug. 12, 2026), https://www.albme.gov/uploads/pdfs/ FDA_Letter_to_FSMB_-_August_12_2026.pdf ........................................................................................................9

*Necessary*, Black's Law Dictionary (12th ed. 2024) ........................................................................7

Defendants Novo Nordisk A/S and Novo Nordisk Inc. (collectively, "Novo Nordisk") hereby oppose Plaintiff Strive Specialties Inc.'s Motion to Alter or Amend the Judgment and for Reconsideration or, in the Alternative, for Leave to Amend (Dkt. 56) ("Mot." or "Motion").

## INTRODUCTION

The Court's Opinion and Order (Dkt. 55) ("Order") dismissing Strive's First Amended Complaint (Dkt. 41) ("FAC") was correct, and there is no basis to reconsider it. As the Court held, and as Strive has effectively conceded, Strive's unapproved compounded GLP-1 drugs cannot compete with Novo Nordisk's FDA-approved GLP-1 drugs because Strive's "compound[ed] GLP-1 medications are only available to patients that cannot use branded GLP-1 medications as a matter of medical necessity." Order at 11. The Court's conclusion is compelled by the Federal Food, Drug, and Cosmetic Act ("FDCA"), including the plain language of Section 503A, 21 U.S.C. § 353a—which requires a compounded drug to be ***necessary*** for an identified individual patient.

Strive now argues that physicians may "prescribe compounded GLP-1 medications even when a branded product remains a medically viable option." Mot. at 6. But, as the Court already held, § 353a on its face does not authorize compounding of medically ***unnecessary*** drugs. Indeed, Strive's newly raised argument is contradicted by its own website, which says in "disclaimers" that "compounded drugs are intended for patients whose prescriber has determined their medical needs are not met by an available FDA-approved drug":

> IMPORTANT INFORMATION ABOUT COMPOUNDED MEDICATIONS
>
> This medication has been compounded (custom-prepared) by a pharmacy. Compounded medications are specially prepared for identified individual patient needs based on a valid prescription from a prescribing healthcare practitioner and, as such, are not reviewed or approved by the U.S. Food and Drug Administration (FDA) for safety or efficacy. Compounded drugs are intended for patients whose prescriber has determined their medical needs are not met by an available FDA-approved drug. These statements have not been evaluated by the FDA.

Ex. 1 (current page for compounded semaglutide); *see* Exs. 2-4 (current pages for other products).[1]

---

[1] Strive Pharmacy, *Semaglutide/Glycine/B12*, https://www.strivepharmacy.com/medications/semaglutide-glycine-b12 [https://perma.cc/KUJ9-8487] (accessed Sept. 3, 2026) (Ex. 1); Strive

Other sections of Strive's website similarly contradict the arguments in Strive's motion. *See, e.g.*, Ex. 5 at 5 (compounding pharmacies "can compound patient-specific medications for patients whose clinical needs cannot be met by an FDA approved drug."); Ex. 6 at 12 (providers "turn to compounding when a patient's needs can't be met by standard options.").[2] The trade association for compounding pharmacies (of which Strive is a "platinum" sponsor) agrees and explains that "compounding should not be competition for FDA-approved drugs" because "[i]t's a secondary therapy designed to fill gaps in drug supply that FDA-approved drugs can't fill." Ex. 7 at 1.[3]

"[C]ourts should be loathe" to reconsider orders absent "extraordinary circumstances," *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 817 (1988), and Strive identifies none. And most fundamentally, Strive cannot identify a manifest error of law in the Court's decision. There is thus no basis to reconsider it, and Strive's request for leave to make marginal amendments in a third complaint is both futile and unduly delayed. The Court should deny the Motion in its entirety.

## PROCEDURAL BACKGROUND

Strive initially amended its complaint three months after filing suit. *See* Dkt. 1; FAC. According to the Amended Complaint, a compounder caters to demand for "personalized medicine" by serving "patients with unique needs that make FDA approved medications

---

Pharmacy, *Tirzepatide/Glycine/B12*, https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12 [https://perma.cc/YKY8-37EV] (accessed Sept. 3, 2026) (Ex. 2); Strive Pharmacy, *Ketamine*, https://www.strivepharmacy.com/medications/ketamine [https://perma.cc/LB79-B9NU] (accessed Sept. 3, 2026) (Ex. 3); Strive Pharmacy, *Methylcobalamin (Synapsin)*, https://www.strivepharmacy.com/medications/methylcobalamin-b12-nasal-spray-synapsin [https://perma.cc/ZBZ2-7G2T] (accessed Sept. 3, 2026) (Ex. 4).

[2] Strive Pharmacy, *Defend Personalized Medicine with Strive Pharmacy*, https://www.strivepharmacy.com/defend [https://perma.cc/TF6X-U8H2] (accessed Sept. 3, 2026); Strive Pharmacy, *What Is a Compounding Pharmacy?*, https://www.strivepharmacy.com/blog/what-is-a-compounding-pharmacy [https://perma.cc/X4UV-QL2A] (accessed Sept. 3, 2026).

[3] Alliance for Pharmacy Compounding ("APC"), *Scott Brunner on Protecting Patient Access to Compounded GLP-1s*, https://a4pc.org/inthenews/politico-pro-qa-scott-brunner-on-protecting-patient-access-to-compounded-glp-1s [https://perma.cc/U6YR-S7KN] (accessed Sept. 3, 2026); *see* APC, *APC Corporate Patron Program*, https://a4pc.org/patrons (accessed Sept. 4, 2026).

unsuitable." FAC ¶¶ 60, 72. A compounded product can be dispensed if it is "necessary for an identified individual patient." *Id.* ¶ 62 (citing 21 U.S.C. § 353a). Strive's allegations also took the position that there is no overlap between patients that need FDA-approved GLP-1 drugs and those that need unapproved compounded GLP-1 drugs. Strive alleged that when the country faced a shortage of FDA-approved GLP-1 drugs from 2022 to 2025, compounding pharmacies produced exact replicas of the name-brand drugs ordinarily produced by Novo Nordisk and Eli Lilly. *Id.* ¶¶ 91, 93. But this was separate from the compounding pharmacies' role in "meeting specific patient needs" through "personalized, compounded versions of GLP-1 drugs" after the shortage ended. *Id.* ¶¶ 95-96. The demand for the former did *not* affect the demand for the latter. *Id.* ¶ 95.

In its motion to dismiss, Novo Nordisk showed that Strive failed to plausibly allege a relevant market and antitrust injury because lawfully compounded, personalized GLP-1s by definition do not and cannot legally compete with FDA-approved GLP-1 medications. Dkt. 42 at 15; *see also* Dkt. 43 at 11-14 (similar arguments in Defendant Eli Lilly & Co.'s motion).

On August 3, 2026, the Court issued the Order and dismissed Strive's claims with prejudice. The Court held that § 353a permits the dispensing of a compounded drug only when the "branded medication is incapable of meeting a patient's specific medical needs." Order at 11. As a result, Strive lacked a "foundational showing that the two products are meaningful market alternatives," and this lack of reasonable interchangeability between Novo Nordisk's FDA-approved GLP-1 medications and unapproved compounded GLP-1 drugs was fatal to both Strive's alleged relevant market and its claimed antitrust injury. Order at 11-14.

Strive now asks for reconsideration or, in the alternative, leave to file a third complaint.

## ARGUMENT

### I. The Court Should Not Reconsider Its Order.

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be

used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478-79.[4] Because "[l]itigants are expected to present their strongest case when the matter is first considered," *Superior Sales W., Inc. v. Gonzalez*, 2020 WL 520968, at *5 (W.D. Tex. Jan. 9, 2020), a motion for reconsideration "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Mot. at 3 (quoting *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989)). "A 'manifest error' is an error 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)); *see also Sabal Ltd. LP v. Deutsche Bank AG*, 2016 WL 6462300, at *3 (W.D. Tex. Nov. 1, 2016) (applying standard to reconsideration motions); *Salomon v. Wells Fargo Bank, N.A.*, 2010 WL 2900783, at *3 (W.D. Tex. July 22, 2010) (same).

Strive's only basis for reconsideration is that the Court committed a manifest error of law in interpreting § 353a. Mot. at 4. But the Court's interpretation is correct and certainly was not a "complete disregard of the controlling law." *Lyles*, 871 F.3d at 311. Strive has not plausibly alleged a cognizable relevant market, antitrust injury, or its participation in a relevant line of commerce and cannot do so. *See* Order at 11-15. Nothing in its motion for reconsideration changes that reality,

---

[4] Strive purports to invoke Rule 54(b), but that rule does not apply because the Order disposed of every claim. *See* Fed. R. Civ. P. 54(b) (rule applies only where the court "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."); *Primerica Life Ins. Co. v. Pawlik*, 2021 WL 5197487, at *2 (W.D. Tex. July 1, 2021) (Rule 54(b) "governs motions to reconsider orders that do not dispose of every claim." (citing *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017))). In addition, the Court's dismissal with prejudice "is a final judgment on the merits." *Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 362 (5th Cir. 2003). Thus, Strive's motion is properly considered under Rule 59(e). In any event, Strive admits that the Rule 54(b) and Rule 59(e) standards are the same as applied here. *See* Mot. at 3.

and Strive's disagreement with the Court's correct decision is no basis for reconsideration.

**A. Strive's New Interpretation of Section 353a Is Wrong as a Matter of Law.**

To prevail on its motion, Strive must show that the Court's interpretation of § 353a was "plain[ly] and indisputabl[y]" incorrect and "amount[ed] to a complete disregard of the controlling law." *Lyles*, 871 F.3d at 311. Strive argues that the Court erred in holding that § 353a limits unapproved compounded medications "to patients that cannot use branded GLP-1 medications as a matter of medical necessity." Mot. at 4 (quoting Order at 11). Strive claims that § 353a does ***not*** require "a finding that a patient is unable to use a branded or commercially available medication." Mot. at 5. Instead, Strive's new position is that compounding of an unapproved drug is permissible whenever a physician prescribes one, "even when a branded product remains a medically viable option." Mot. at 6; Dkt. 56-1 (Prop. Second Am. Compl. ("PSAC")) ¶¶ 206, 219.

However, Strive does not cite *any* case law—let alone controlling law—advancing its interpretation of § 353a. Mot. at 4-6. Strive thus cannot demonstrate that the Court's interpretation of § 353a was "a complete disregard of the controlling law," *Lyles*, 871 F.3d at 311; *see Wilson v. Tessmer Law Firm, PLLC*, 2021 WL 7448751, at *2 n.3 (W.D. Tex. Mar. 4, 2021) ("[A]s a matter of this circuit's law, [non-binding authorities] cannot identify a 'manifest error of law or fact.'" (quoting *Lyles*, 871 F.3d at 311)). The lack of authority supporting Strive's interpretation is not surprising because it is wrong. Strive's strained interpretation is inconsistent with the plain language of the statute and FDA's regulatory regime, contradicts FDA guidance and public statements, and represents a sharp reversal from its own statements to this Court and the public.

***1. The Statute and Statutory Scheme Support the Court's Interpretation.***

FDA premarket approval of new drugs is a cornerstone of federal drug regulation and has existed since the FDCA was first enacted in 1938. *See Med. Ctr. Pharm. v. Mukasey*, 536 F.3d 383, 388-89 (5th Cir. 2008); *see also Abigail Alliance v. von Eschenbach*, 495 F.3d 695, 703-07 (D.C.

Cir. 2007). The FDCA prohibits the introduction of a "new drug" into interstate commerce without FDA approval, *see* 21 U.S.C. § 355, subject to only certain narrow, enumerated exceptions, *see Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 364-65 (2002) (§ 353a "exempts compounded drugs from the FDCA's 'new drug' requirements and other requirements provided the drugs satisfy a number of restrictions"); *Med. Ctr. Pharm.*, 536 F.3d at 387 ("only in certain statutorily-delimited circumstances" does "the FDCA … permit[] compounded drugs to avoid the new drug approval process"). Without a requirement of premarket approval, patients could be exposed to unreasonable risks from new, unapproved drugs that are not safe, effective, or of high quality.

This statutory scheme is reflected in the plain text of § 353a. The statute operates by exempting a compounded drug from three bedrock requirements in the FDCA: premarket FDA approval, current good manufacturing practice requirements, and labeling with adequate directions for use—but only if it meets certain conditions. *See* 21 U.S.C. § 353a(a) (three requirements "shall not apply to a drug product if" conditions are met). Specifically, § 353a's exemption applies only if (1) the compounding is done "for an individual identified patient based on the receipt of a valid prescription" indicating "that a compounded product is necessary for the identified patient"; (2) "the drug product meets the requirements of" § 353a, and (3) the compounding is performed by a pharmacist or physician meeting the requirements of § 353a(a)(1)-(2). *Id.*[5]

Section 353a(a) uses the term "necessary," which means "indispensable, requisite, essential, needful; that cannot be done without." *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 465 (5th Cir. 2021) (citation omitted); *see Babanov v. Velasco*, 2010 WL 11646530, at *6 (S.D. Tex. June 22, 2010) ("[T]he ordinary, everyday meaning of the

[5] By recognizing these requirements, the Court's dismissal order does not (as Strive insinuates, *see* Mot. at 6) interpret § 353a to render compounding "effectively unlawful."

word 'necessary' is 'absolutely needed, required.'"); *Necessary*, Black's Law Dictionary (12th ed. 2024) (necessary means "needed for some purpose or reason; essential"). A compounded drug thus must be truly needed to comport with § 353a(a), and not merely "preferable," "more convenient," or something less than actually necessary. Congress could have used a more permissive term in enacting or amending § 353a(a), but its decision to use "necessary" is dispositive. *See United States ex rel. Conyers v. Kellogg Brown & Root, Inc.*, 175 F.4th 569, 572 (5th Cir. 2026) ("Congress could have" written the statute differently, "[b]ut it did not.").

Strive muddies this clear reading of "necessary" with two incorrect arguments. *First*, Strive claims that the "necessary" requirement of § 353a is met whenever a compounded drug is purportedly "better" for a patient. PSAC ¶¶ 65, 206, 219. That interpretation is untenable in light of the plain meaning of the word "necessary" and the FDCA's statutory scheme, *see infra* p. 8.

*Second*, Strive contends that a different subsection of the statute, § 353a(b)(2), extends the scope of lawful compounding beyond instances where the compounded drug is "necessary" to any instance where a "change between the compounded product and the commercially available product produces a 'significant difference'" for a patient. Mot. at 5, 7 (citing 21 U.S.C. § 353a(b)(2)). That argument is also wrong. Section 353a(b)(2) defines the term "essentially a copy" only "[f]or purposes of paragraph (1)(D)," *i.e.*, § 353a(b)(1)(D). Together, those subsections further *limit* the scope of permissible compounding by specifying further criteria that a drug product must meet, beyond being medically "necessary," to be compounded under § 353a(a). *See* 21 U.S.C. § 353a(b)(1) ("A drug product may be compounded under subsection (a) if the licensed pharmacist or licensed physician . . . (D) does not compound regularly or in inordinate amounts" products meeting the "essentially a copy" definition). That is, § 353a(b)(2) creates *additional* restrictions on permissible compounding; a compounded drug that is not "essentially a copy" must

still meet the "necessary" clause of § 353a(a). *See W. States*, 535 U.S. at 364-65 (describing § 353a). It does not, as Strive asserts, create an *alternative* to the "necessary" requirement.

Nothing in the broader statutory scheme salvages either Strive's attempted rewriting of the term "necessary" in § 353a or its proposed mix-and-match reading. As noted, § 353a operates as an exemption to the otherwise bedrock requirements that drugs have premarket approval, current good manufacturing practice requirements, and adequate labeling. *See* 21 U.S.C. § 353a(a). "An exception … is 'usually read … narrowly in order to preserve the [provision's] primary operation,'" and Strive offers no justification for a broader interpretation. *Maracich v. Spears*, 570 U.S. 48, 60 (2013) (quoting *Commissioner v. Clark*, 489 U.S. 726, 739 (1989)). Indeed, Strive's proposed interpretations of § 353a would invert the entire regulatory scheme by converting this limited and narrow exemption for compounding of non-FDA-approved drugs into blanket authorization based on any prescription. Congress "does not … hide elephants in mouseholes" by "alter[ing] the fundamental details of a regulatory scheme in vague or ancillary terms." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Strive's new interpretation of § 353a would improperly upend the entire, near century-old FDA drug-approval scheme.[6]

### *2. FDA Confirms the Court's Interpretation.*

Strive's untenable interpretations of § 353a also run headlong into countless statements and guidance from FDA, which fully comport with the FDCA's entire purpose of prohibiting the

[6] The Court need not consider "the legislative history" because "the statutory text itself yields a single meaning." *Texas v. U.S. Envtl. Prot. Agency*, 829 F.3d 405, 422 n.27 (5th Cir. 2016). But the legislative history would only confirm the Court's interpretation of § 353a. *See, e.g.*, 143 Cong. Rec. S9811, S9839 (1997) (statement of Senator Kennedy) (narrow exemption for medically necessary compounding would not create a "loophole that would allow unregulated drug manufacturing to occur under the guise of pharmacy compounding"); S. Rep. 105-43, 1997 WL 394244, at *67-68 ("To qualify for the exemptions, the pharmacist or physician must be able to cite a legitimate medical need for the compounded product ***that would explain why a commercially available drug product would not be appropriate.***" (emphasis added)).

marketing of unapproved drugs to safeguard patient safety, except in very narrow circumstances.

As just a few examples (emphases added):

- An August 2026 letter from FDA's Acting Director of the Office of Compounding Quality and Compliance states: "Because compounded drugs are subject to a lower regulatory standard than approved drugs, ***patients should not receive them unless an approved drug does not meet their medical needs***." Ltr. from Matthew J. Lash to Humayun J. Chaudhry (Aug. 12, 2026), https://www.albme.gov/uploads/pdfs/FDA_Letter_to_FSMB_-_August_12_2026.pdf.

- A June 2026 alert states: "Compounded drugs ***should only be used in patients whose medical needs cannot be met by an FDA-approved drug***." FDA, *FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss*, https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

- A September 2025 guidance states: "Practitioners … sometimes provide compounded drugs to patients ***when an FDA-approved drug is not medically appropriate to treat them. In these situations***, compounding can serve an important patient need." It then proceeds to reiterate that "[c]ompounded drugs should only be used in patients whose medical needs cannot be met by an FDA-approved drug." FDA, *Compounding and the FDA: Questions and Answers*, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

- An October 2021 guidance states: "compounded drug products ***should only be used when an FDA-approved product is not available to meet the medical needs of an individual patient***." FDA, *Guidance for Industry on Hospital and Health System Compounding under Section 503A of the Federal Food, Drug, and Cosmetic Act* at 3, https://www.fda.gov/media/97353/download?attachment.

- Indeed, the same 2018 guidance for industry that Strive cites (Mot. at 5) explains that "Section 503A provides exemptions" from key requirements "***so that*** drug products can be compounded as customized therapies for ***identified individual patients whose medical needs cannot be met by commercially available drug products***." FDA, *Compounded Drug Products That Are Essentially Copies of a Commercially Available Drug Product Under Section 503A of the Federal Food, Drug, and Cosmetic Act* at 3, https://www.fda.gov/media/98973/download.[7]

### *3. Strive's Own Allegations and Public Statements Further Confirm the Court's Interpretation.*

In interpreting § 353a, the Court relied (as it should in resolving a Rule 12(b)(6) motion)

[7] The portion of the guidance that Strive quotes again relates to the interpretation of the separate "essentially a copy" provision of § 353a(b)(2), *see* Mot. at 5, and not when the statute permits compounding in the first instance, *see supra* pp. 7-8.

on the allegations in Strive's Amended Complaint to conclude that the statute requires "a finding that a branded medication is incapable of meeting a patient's specific medical needs." Order at 11 (citing FAC ¶¶ 5, 62, 100-102). Strive now attempts to disavow those allegations before this Court but continues to say the opposite in public. As Strive's webpage advertising non-FDA-approved compounded semaglutide explains in a legal disclaimer: "Compounded drugs are intended for patients whose prescriber has determined their medical needs are not met by an available FDA-approved drug." Ex. 1 at 2. That is, as Strive's website explains, a healthcare provider "turn[s] to compounding when a patient's needs can't be met by standard options." Ex. 6 at 12. Strive's public statements that compounded products are for patients whose "medical needs are not met by an available FDA-approved drug" fully undercut Strive's newfound litigation position, in seeking to overturn the Court's Order, that physicians may "prescribe compounded GLP-1 medications even when a branded product remains a medically viable option." Mot. at 6.

At the very minimum, Strive cannot establish a plain and indisputable "manifest error" when its initial complaint and public statements concede (as they must) the very same limitations on compounding of unapproved drugs that it now asks the Court to reconsider and ignore. *See Lyles*, 871 F.3d at 315 ("The district court did not create manifest error by holding that Lyles's own allegation of malpractice against Dr. Sin is evidence that malpractice was a reasonable explanation … that Lyles needed to exclude."); *cf. Salomon*, 2010 WL 2900783, at *3 (no manifest error where the Court identified "a split in opinion" and adopted one "after deliberation").

**B. Strive's Recycled Product Market Arguments Are Still Wrong.**

Strive does not (and cannot) argue that the Court committed manifest error of law with respect to its holding that Strive failed to plausibly allege a cognizable product market. Instead, it merely asserts that the Court "appears" to have required "a degree of interchangeability" beyond what antitrust law does. Mot. at 8. That falls well short of the reconsideration standard, and Strive's

motion should be denied on that basis alone. *Waltman*, 875 F.2d at 473. Strive's market definition arguments fail for at least two additional reasons.

*First*, Strive parrots arguments that it made in opposition to Novo Nordisk's motion to dismiss. For example, Strive again argues that the antitrust laws do not require identity of products but rather "reasonable interchangeability." *Compare* Dkt. 49 at 15 *with* Mot. at 8-11.[8] Similarly, Strive repeats its prior argument that the "commercial realities" show that compounded GLP-1s compete with FDA-approved GLP-1s. *Compare* Dkt. 49 at 5-6 *with* Mot. at 9-13. The Court expressly considered and rejected these allegations and arguments. *See* Order at 8, 12 (recognizing "commercial realities" as relevant to market definition, but holding that Strive failed to make the "foundational showing that the two products are meaningful market alternatives"). Strive "offer[s] no new evidence, fail[s] to demonstrate an intervening change in law, and fail[s] to allege anything beyond mere disagreement" with the Court's conclusion, and thus provides no basis for reconsideration. *Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 884 (5th Cir. 2016).

*Second*, Strive's arguments are still incorrect. Strive argues that the Court held that products may be in the same market only if the products are "identical." Mot. at 8-9. The Court's decision did no such thing; it explained that Strive "failed to plausibly allege reasonable interchangeability or cross-elasticity of demand" given the statutory scheme. Order at 11. As the Fifth Circuit has repeatedly held, an antitrust plaintiff must define the relevant product market by including "all commodities reasonably interchangeable by consumers for the same purposes." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (citation omitted); *accord,*

[8] Strive may spill more ink about market definition on this Motion than it did in opposing the motions to dismiss, but it does not offer any arguments that it could not have offered in its two oppositions. *See, e.g.*, *Templet,* 367 F.3d at 479 (a motion for reconsideration "is not the proper vehicle for rehashing … arguments that could have been offered or raised"); *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003) (same).

*e.g.*, *Rx Sols., Inc. v. Caremark, LLC*, 164 F.4th 436, 442-43 (5th Cir. 2026); *Endure Indus., Inc. v. Vizient Inc.*, 164 F.4th 405, 410, 414-16 (5th Cir. 2026); *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002). The Court properly applied this well-settled doctrine to Strive's allegations and correctly held that Strive failed to plausibly allege that unapproved compounded GLP-1 drugs are in the same product market as FDA-approved GLP-1 drugs. Order at 8-14.

The Court also correctly held that § 353a precludes a finding that unapproved, personalized, compounded drugs are reasonably interchangeable with FDA-approved ones because the former are lawfully available only when a patient *cannot* use the latter. In other words, a patient's medical needs mandate the use of *either* an FDA-approved drug (the default under the bedrock principles of the FDCA) *or* an unapproved compounded drug (in rare cases of medical necessity), but not both. The Court relied on Strive's own allegations that a physician prescribes a personalized, compounded medication only after "finding that a branded medication is incapable of meeting a patient's specific medical needs." Order at 11 (citing FAC ¶¶ 5, 62, 71, 100-102). Strive cannot now complain that the Court accepted its allegations.

As a fallback, Strive argues that so-called "commercial realities" nonetheless require the Court to consider compounding that is not lawful under § 353a in defining a relevant market. Mot. at 6, 9. But it cites no authority that would allow a court to include unlawful competition as part of a relevant market or to recognize a legal product and an illegal product as reasonably interchangeable. Novo Nordisk is aware of no such case, and the lack of such authority comports with the well-established principle that the antitrust laws do not recognize or protect unlawful competition. *See, e.g.*, *Austin Legal Video, LLC v. Deposition Sols., LLC*, 2023 WL 9107726, at *3 (W.D. Tex. Nov. 16, 2023); *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 165-66 (3d Cir. 2017); *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 787-92 (8th Cir. 2006). Under the

FDCA, any lawful compounding of unapproved drugs must be limited to cases where it is medically "necessary." To the extent Strive seeks to include unlawful compounding activity in the relevant market alongside compounding that is lawful under the FDCA, it provides no basis for this Court to reconsider its Order. Strive's asserted "commercial realities" cannot trump the scope of compounding of unapproved drugs permitted by § 353a and do not compel a different conclusion as to market definition.

Strive's argument now that, as a matter of "commercial realit[y]," lawfully compounded drugs and FDA-approved drugs compete in the same market, is merely Strive's thirteenth-hour litigation position. As Strive recognizes, "[c]ompounding and FDA-approved medications … serve different roles in healthcare," Ex. 8,[9] because personalized, compounded medications can only be prescribed for "patients whose prescriber has determined their medical needs are not met by an available FDA-approved drug," Exs. 1-4. The trade association for compounding pharmacies thus explains "that compounding should not be competition for FDA-approved drugs. It's a secondary therapy designed to fill gaps in drug supply that FDA-approved drugs can't fill." Ex. 7 at 1.

Strive also concocts the argument that non-interchangeable products can be combined into a single market "where that combination reflects commercial realities." Mot. at 10 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 544 (2018)). But Strive relies on an entirely inapt line of cases addressing an "administrative convenience" theory of market definition, "where there is no need to perform separate antitrust analyses for separate product markets when competitive conditions

[9] Strive Compounding Pharmacy, LINKEDIN (July 14, 2026, 5:33 PM), https://www.linkedin.com/posts/strivepharmacy_compounding-and-fda-approved-medications-activity-7488404770798587904-OabM. Notably, this post links to an FDA webpage stating: "FDA's compounding program aims to protect patients from poor-quality compounded drugs, while preserving access to *lawfully-marketed compounded drugs for patients who have a medical need for them.*" FDA, *Drug Compounding*, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding (last updated June 15, 2026) (emphasis added).

are similar for each." *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 565 (6th Cir. 2014) (adopting theory to "cluster" different services in a single market). For example, *Brown Shoe Co. v. United States* acknowledged that men's and women's shoes are not reasonably interchangeable, but held that "[f]urther division" of a proposed market for shoes "does not aid us in analyzing the effects of this merger" because each party's shares were roughly the same across proposed sub-categories. 370 U.S. 294, 327-28 (1962); *see ProMedica*, 749 F.3d at 565 (explaining *Brown Shoe*). But here, Strive explicitly pleaded (and the FDA regulatory scheme confirms) that the competitive conditions for unapproved compounded drugs and FDA-approved medications are different. *See, e.g.*, FAC ¶¶ 59, 68, 95. None of Strive's cited cases supports the clustering into a single market of non-interchangeable products facing different competitive conditions. *See, e.g.*, *ProMedica*, 749 F.3d at 565 (competitive conditions were "similar enough to justify clustering those markets").

Finally, Strive attempts to limit the impact of the Court's market definition holding, arguing that the different regulatory treatment of compounding during shortage periods means that § 353a "cannot be grounds for dismissal as to Defendants' challenged conduct" during the shortage. Mot. at 5 n.2. But, as to Novo Nordisk, Strive's claims challenge only contracts entered "in April 2025"—two months after the FDA declared that the semaglutide shortage ended in February 2025. *See* FAC ¶¶ 91, 115. After that date, the FDCA only permitted Strive to manufacture unapproved, personalized compounded drugs (subject to all of the FDCA's requirements), not purported replicas of Novo Nordisk's GLP-1 medicines. *See* 21 U.S.C. §§ 353a, 353b. Strive thus cannot show that the Court made a manifest error of law in holding that Strive failed to plausibly allege a cognizable product market. That holding remains dispositive as to all of Strive's claims against Novo Nordisk.

**C. Strive's Remaining Arguments for Reconsideration Fail.**

Strive's remaining arguments for reconsideration are recycled from its prior submissions and/or derivative of its incorrect interpretation of § 353a.

*First*, Strive reprises the argument that market definition is a fact question that should not be resolved on the pleadings. *Compare* Mot. at 13-14 *with* Dkt. 49 at 5. But where a plaintiff fails to "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand," "then the 'relevant market is legally insufficient, and a motion to dismiss may be granted.'" *Rx Sols.*, 164 F.4th at 442 (quoting *Apani*, 300 F.3d at 628). That is exactly what happened here: the Court analyzed Strive's allegations and the arguments regarding market definition and concluded that Strive did not and, because of the statutory framework, could not "plausibly allege that its products are interchangeable with Defendants' branded GLP-1 medications." Order at 11. Furthermore, the Court correctly held that the FAC did not allege that Strive's "GLP-1 products function as meaningful substitutes for branded GLP-1 medications, 'with reference to … cross-elasticity of demand.'" *Id.* (quoting *Rx Sols.*, 164 F.4th at 443). Strive admits that the Court "recognized" these allegations, Mot. at 14, and it agrees that the Court applied the correct legal standard, *id.* at 13. Nothing here supports reconsideration.

*Second*, Strive repeats its market definition arguments (which fail for the reasons outlined above) to challenge the Court's holdings on antitrust injury and harm to competition. *Compare* Mot. at 15-17 *with* Dkt. 49 at 9-13, 17-19. Those arguments fare no better here, and setting aside the Court's interpretation of § 353a would not (as Strive argues) change the Court's conclusion. Mot. at 16-17. The Court already considered Strive's allegations of purported harm to competition. Order at 13. Those allegations describe injury to market participants, "not to the competitive process," *id.*, and so Strive's argument for reconsideration of its failure to allege antitrust injury fails regardless of whether the Court revisits its interpretation of § 353a.

*Finally*, Strive argues for reconsideration of its Clayton Act claim, but makes only the same arguments made in support of its Sherman Act claim. Strive's failure to plausibly allege a relevant

market is also dispositive of its Clayton Act claim. Order at 14-15.

## II. The Court Should Reject the Unauthorized Proposed Amendment.

Because the Court appropriately dismissed Strive's complaint with prejudice, Strive is not authorized to file an amended complaint. The Order terminated Strive's right to amend under Rule 15(a), *see Whitaker v. City of Houston,* 963 F.2d 831, 837 (5th Cir. 1992), and leave should be denied on that basis alone. This conclusion applies with particular force here, where Strive did not seek leave to amend when it learned of Defendants' arguments on the motion to dismiss and instead waited months to do so, only after the Court dismissed the Amended Complaint with prejudice.

Even if the Court were to consider Strive's unauthorized request to file a third complaint, the proposed "Second Amended Complaint" attached to the Motion is futile and unduly delayed. The PSAC does not and cannot fix the fundamental problem that led the Court to dismiss the FAC with prejudice in the first place. Tellingly, Strive does not identify for the Court the specific allegations it proposes to amend or the new allegations it seeks to add. *See* Mot. at 18 (citing the entire PSAC); Mot. Ex. 1. A comparison of the two complaints (submitted as Ex. 9) shows that all of the key allegations from the FAC on which the Court relied in its Order remain in the PSAC. *See* Ex. 9 ¶¶ 7, 61-70, 72-75, 78-79, 104-106. The changes in the PSAC cannot and do not reverse the Court's legal conclusions based on the statute.

The amendments comprise four categories: (1) legal conclusions regarding the regulatory scheme, *see, e.g.*, *id.* ¶ 65; (2) additions of its own name where the prior complaint referred to "compounding pharmacies" generally, *see, e.g.*, *id.* ¶ 121; (3) references to a January 2026 statement from Novo Nordisk's CEO, *see id.* ¶¶ 77, 108; and (4) largely conclusory allegations about compounding pharmacies' share of its proposed markets and purported substitution between and among different types of GLP-1 medications, *see, e.g.*, *id.* ¶¶ 6, 76, 200, 219.

Strive has already amended its complaint once. "Leave to amend is in no way automatic"

under Rule 15(a)(2). *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). Although leave to amend under Rule 15(a)(2) is to be freely given "when justice so requires," a court may deny leave to amend if it "possess[es] a substantial reason" to do so. *Id.* (citations omitted). These reasons include, among others, futility and undue delay. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Farmers Texas Cnty. Mut. Ins. Co. v. 1st Choice Acc. & Inj. LLC*, 168 F.4th 271, 276 (5th Cir. 2026). Strive's proposed amendment does not fix the problems identified in the Court's dismissal order. The amendment would thus be futile and unduly delayed.

**A. Strive's Proposed Amendment Is Futile.**

Strive's request for leave is futile for two reasons. *First*, it cannot overcome the dispositive legal hurdle: that § 353a permits compounding of unapproved drugs only in cases of medical necessity, thus defeating its proposed market definition and allegations of antitrust injury and harm to competition. Some of Strive's proposed amendments are legal conclusions about what § 353a requires. *See, e.g.*, Ex. 9 ¶ 65 ("Importantly, Section 503A does not mandate that compounded drugs be prescribed only when a patient cannot take a different drug or when a compounded drug is medically necessary."). It is axiomatic that the Court "gives no weight to the plaintiff's legal conclusions." *Mack v. RPC, Inc.*, 439 F. Supp. 3d 897, 900 (E.D. Tex. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). The Court correctly interpreted § 353a. Factual allegations (new or old) cannot rewrite the statute.

Section 353a's limitation of the lawful compounding of non-FDA-approved drugs to cases of medical necessity is conclusive as to the viability of Strive's claims. The limited factual matter regarding "commercial realities" that Strive seeks to add, much like Strive's original allegations, runs into the express statutory and regulatory limitations of § 353a. And those limitations continue to foreclose Strive from plausibly alleging its proposed relevant market, that it competes with Novo Nordisk (both for purposes of antitrust injury and its status as a competitor as required under

Clayton Act Section 3), and harm to competition. *See supra* Section I.B-C.

*Second*, Strive's proposed amendment still fails to plead injury to itself and does not address the other deficiencies that Novo Nordisk identified in its motion to dismiss. Adding the words "Strive and other" or "including Strive" around references to "compounding pharmacies" does not suffice (*e.g.*, Ex. 9 ¶¶ 106, 117, 121, 137, 178-179) because, like the Amended Complaint, the proposed amendment still fails to "identify a single allegation of a lost sale, prescription, contract, relationship, or opportunity as a result of the alleged agreements," Dkt. 52 at 8. Strive's continued refusal to provide greater specificity demonstrates that this deficiency is incurable.

Moreover, Strive does not even attempt to address the other deficiencies identified in Novo Nordisk's motion to dismiss that the Court did not reach (because it did not need to), including the failure to plausibly plead exclusionary conduct or substantial foreclosure. *See* Dkt. 42 at 9-12; Dkt. 52 at 1-5. Those deficiencies remain and render Strive's proposed amendment futile.

**B. Strive's Proposed Amendment Is Unduly Delayed.**

Strive's undue delay in seeking leave to amend independently justifies denial. "[T]he district court may consider that the moving party failed to take advantage of earlier opportunities to amend." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming denial of leave to amend where plaintiff had already amended complaint once). "When parties delay seeking leave to amend for several months after a motion to dismiss is filed," the Fifth Circuit has "held that district courts do not abuse their discretion in denying the request for leave." *Farmers Texas*, 168 F.4th at 279 (citation omitted). "[A] trial court may properly consider (1) an 'unexplained delay' … and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Id.* (second alteration in original). The Fifth Circuit has thus "repeatedly affirmed district courts' decisions to deny requests for leave to amend where there was undue delay, especially when the request came only after the case was dismissed."

*Id.* at 281 (citation omitted). These principles soundly defeat Strive's request.

*First*, Strive waited until after the Court dismissed its claims to seek leave to amend, almost four months after Defendants moved to dismiss and seven and four months after Strive's original and amended complaints, respectively. Strive's justification for the delay—that the deficiencies in its complaint "were identified for the first time in the dismissal order," Mot. at 18—is not credible. Contrary to Strive's revisionist history, Strive has been on notice of those deficiencies at least since Defendants moved to dismiss in April 2026. Novo Nordisk's opening motion explained that "lawfully compounded products are not substitutes for Novo Nordisk's products—*i.e.*, they are not in the same product market." Dkt. 42 at 15; *see also* Dkt. 43 at 11-13 (arguing that "FDA-approved GLP-1 medicines and compounded GLP-1 drugs" are not substitutes).

Thus, "throughout the pendency of the motions to dismiss [its] case, [Strive] urged the sufficiency of [its] complaint and did not seek leave to amend, despite awareness of its potential deficiencies." *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010). Even though "it is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted," *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (5th Cir. 2002), Strive did not seek such leave in either of its oppositions. *See* Dkt. 48, 49. By waiting until after its claims had already been dismissed, Strive exercised less diligence than the plaintiff in *Great Plains*, who at least made a request for leave prior to the court's dismissal order. *See id.* at 330 (affirming dismissal without leave to amend).

*Second*, Strive does not and cannot identify any new information justifying its delay. *See* Mot. at 17-18. Indeed, Strive knew (or should have known) of all of the new factual allegations it seeks to add since well before Strive filed its original complaint. Strive adds its name before references to "compounding pharmacies" to attempt to plead injury, *see supra* pp. 17-18, but Strive

and/or its counsel should have known that injury must exist in order for Strive to have standing to even file suit. Likewise, Strive proposes to add publicly reported statements by Novo Nordisk's CEO on January 12, 2026, *see, e.g.*, Ex. 9 ¶¶ 77, 108—before even the original complaint was filed.[10] Strive also seeks to add allegations about compounding pharmacies' share of its proposed markets and purported substitution between and among different types of GLP-1 medications. *See, e.g.*, *id.* ¶¶ 6, 76, 200. But Strive never explains (nor could it) why it was unable to include those new allegations in either of its earlier complaints, particularly when those complaints included other allegations about substitution and interchangeability. *See, e.g.*, FAC ¶¶ 189, 194.

In sum, Strive was on notice of the deficiencies in its Amended Complaint *and* possessed all of the facts it now proposes to add. Strive is asking the Court to "serve as [its] legal advisor," using "a dispositive motion [as] a 'dry run' for [Strive] to 'wait and see' what the district court will decide before requesting leave to amend." *Rodriguez-Meza v. Venegas*, 2019 WL 13150014, at *3 (W.D. Tex. Jan. 17, 2019) (quoting *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018)). "[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim," *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (citation omitted), and Strive's request for leave is "essentially asking for an advisory opinion regarding whether an amendment to its complaint would be futile or plausibly state a claim." *ALD Social LLC v. Google LLC*, 2023 WL 11915670, at *2 (W.D. Tex. July 25, 2023). This Court should "decline[] the invitation" and deny Strive's motion. *Id.*

**CONCLUSION**

The Court should deny Strive's Motion and enter final judgment for Defendants.

[10] These allegations also do not move the needle. Even if Strive had not included similar allegations in the Amended Complaint, *see* FAC ¶ 103, Strive does not (and cannot plausibly) allege that these statements refer only to lawful compounding of unapproved drugs authorized by § 353a.

Dated: September 4, 2026

Respectfully submitted,

*/s/ Jonathan L. Smith*

Randall L. Christian (TX Bar No. 00783826)
Jonathan L. Smith (TX Bar No. 24088436)
BOWMAN & BROOKE LLP
2901 Via Fortuna Drive
Suite 500
Austin, TX 78746
T: (512) 874-3811
Randall.Christian@bowmanandbrooke.com
jonathan.smith@bowmanandbrooke.com

*/s/ Andrew D. Lazerow*

Andrew D. Lazerow (*pro hac vice*)
Ashley E. Bass (*pro hac vice*)
Henry B. Liu (*pro hac vice*)
Jeffrey Cao (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
T: (202) 662-6000
alazerow@cov.com
abass@cov.com
hliu@cov.com
jcao@cov.com

Kurt Calia (*pro hac vice forthcoming*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
T: (650) 632-4700
kcalia@cov.com

*Counsel for Defendants Novo Nordisk Inc. and Novo Nordisk A/S*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 4, 2026, Defendants Novo Nordisk A/S and Novo Nordisk Inc. filed the foregoing Opposition to Plaintiff's Motion to Alter or Amend the Judgment and for Reconsideration or, in the Alternative, for Leave to Amend using the CM/ECF system, which will send notification and a copy of such filing to all counsel of record.

*/s/ Jonathan L. Smith*
Jonathan L. Smith

*Counsel for Defendants Novo Nordisk Inc. and Novo Nordisk A/S*