**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| STRIVE SPECIALTIES INC., *Plaintiff,* v. ELI LILLY & CO., NOVO NORDISK A/S, and NOVO NORDISK INC. *Defendants.* | Case No. 5:26-cv-00155-MA |

**PLAINTIFF STRIVE SPECIALTIES INC.'S REPLY IN SUPPORT OF ITS MOTION TO ALTER OR AMEND JUDGMENT AND FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND**

The Opinion and Order dismissing this case rest on a premise that cannot support dismissal: that "[b]ecause compound GLP-1 medications are only available to patients that cannot use branded GLP-1 medications as a matter of medical necessity, they cannot reasonably be understood as an interchangeable substitute for branded GLP-1 medications in the ordinary sense of market competition." Doc. 55 at 11. Not only is that conclusion wrong as a matter of law, it is wholly inconsistent with the well-pleaded facts in Strive's original complaint and First Amended Complaint ("FAC"), Defendants' own statements, other courts' findings, and established economic realities. Compounded GLP-1 drugs compete—in fact—with branded GLP-1 drugs. Strive has plausibly shown as much and Defendants' responses to Strive's Motion don't show otherwise. To the contrary, rather than defend the Order's central conclusion, Defendants pursue arguments they never made in their prior briefing, such as the purported "illegality" of dispensing compounded GLP-1 medicines. Doc.

57 at 5; Doc. 58 at 12. The Court should therefore reconsider its order, withdraw its prior opinion, and let the case proceed based on Strive's well-pleaded allegations.

That conclusion is especially warranted in light of the Fifth Circuit's long-standing practice of requiring district courts to grant plaintiffs leave to amend *before* dismissing with prejudice unless there are specific and articulated reasons why leave to amend would be futile. The Court articulated no such reasons and Defendants' responses don't show why amendment would be futile. Strive's Motion shows why it wouldn't be. Strive's motion should therefore be granted.

## I. The Court Should Reconsider Dismissal Under Rule 54(b) or Rule 59(e).

Strive seeks reconsideration under Rule 54(b) and, alternatively, relief under Rule 59(e). Rule 54(b) permits the Court to revise an interlocutory order any time before entry of final judgment. *Charis Eng'g, LLC v. BCCK Eng'g, Inc.*, No. 23-CV-00084-DC, 2026 WL 326595, at *1 (W.D. Tex. Jan. 13, 2026); *see also Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) (the court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient"). Contrary to Defendants' arguments, *see* Doc. 57 at 7 & Doc. 58 at 4, final judgment hasn't been entered yet, but if the Court's Opinion and Order constitute a final judgment, Rule 59(e) likewise permits relief. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

## II. Strive Plausibly Alleged Competition Between Compounded and Branded GLP-1 Drugs.

### a. Defendants Have Acknowledged Competition.

"***[P]ractical*** indicia" determine the boundaries of antitrust markets and competition in those markets turns on "commercial ***realities***." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, 336–37 (1962) (emphasis added). Defendants cannot deny the commercial reality that compounded and branded GLP-1 drugs compete because they have already admitted as much.

The FAC contains precisely such admissions. But the Court's Opinion, Dkt. 55, didn't credit them, despite Rule 12(b)(6) requiring the Court to "operat[e] on the assumption that the factual allegations in the complaint are true." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Instead, the Court ***rebutted*** Defendants' admissions. For example, Novo's former CEO stated "compounders took part of our business away," Dkt. 41 ¶ 103, a practice the Fifth Circuit has recognized—correctly—as competition. *See United States v. Simmons*, 374 F.3d 313, 315 (5th Cir. 2004) (in "very competitive" markets, firms "take business away from competitors"). But the Court found this statement factually implausible, holding that "Strive's allegation that Defendants have attempted to prevent it . . . from 'taking away potential business from [Defendants'] branded GLP-1 drugs' is not reconcilable with the fact that the decision to use compounded medication is not driven by ordinary consumer preference." Doc. 55 at 12. In other words, Strive's factual allegations were not taken as true. This is clear error: "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Neitzke*, 490 U.S. at 326). Defendants' contrary arguments don't cut it, either. Doc. 57 at 1; Doc. 58 at 17–18.

Moreover, Defendants' statements to other courts confirm competition between compounded and branded GLP-1 drugs. For example, in ongoing litigation with another company offering compounded GLP-1 drugs, Willow Health, Lilly argued, and the district court agreed, that Willow and Lilly are direct competitors for sales of GLP-1 drugs because they "vie for the same dollars from the same consumer group." *Eli Lilly & Co. v. Willow Health Servs., Inc.*, 2026 WL 639976, at *6 (C.D. Cal. Feb. 3, 2026); *see also id.* at *7 (crediting Lilly's allegation that Willow's conduct "results in potential patients being lured away" from Lilly). The district court dismissed the case on other grounds and Lilly appealed, reiterating that "***Lilly and Willow are direct competitors***" that "***are competing for the same customers***." *Eli Lilly and*

*Co. v. Willow Health Svcs., Inc.*, No. 26-1317, Dkt. 20.1 at 46, 54 (emphasis added) (Brief for Appellant Eli Lilly And Company) (9th Cir. July 24, 2026).

Put simply, it cannot be true that branded GLP-1 drugs both ***compete directly*** with compounded GLP-1 drugs, as Defendants have said in public statements and court filings, and that branded GLP-1 drugs ***don't compete*** with compounded GLP-1 drugs, as this Court held. Direct competition reflects commercial market realities, and the practical indicia of this market include Defendants' own acknowledgments of competition with compounding pharmacies. *See Brown Shoe Co.*, 370 U.S. at 325 (industry recognition of a market can help determine that market's boundaries).

**b. There is Cross Elasticity of Demand Between Compounded and Branded GLP-1 Drugs.**

The Court held that "price disparity does not imply cross-elasticity between two products unless consumers can substitute one for the other in response to that disparity." Doc. 55 at 12. Defendants' oppositions also treat Strive's market theory as dependent on price-driven switching alone. Doc. 57 at 3–4; Doc. 58 at 11, 15. That is not the governing test. The Supreme Court has held that market definition can be based on "customer response to innovation and other competitive stimuli," and that "price is only one factor in a user's choice between one [product] and another." *United States v. Continental Can Co.*, 378 U.S. 441, 457 (1964). The Court further explained:

> That there are price differentials between [ ] products, or that the demand for one is not particularly or immediately responsive to changes in the price of the other, are relevant matters, but ***not determinative of the product market issue***. . . . The consumer, for example, may begin to prefer one [product] over the other . . . . ***This may not be price competition, but it is nevertheless meaningful competition between interchangeable [products]***.

*Id.* (emphasis added). That is precisely what Strive alleged. Doc. 41 ¶¶ 75–76, 98, 100–103. Competition between compounded and branded GLP-1 drugs certainly implicates more than price. The FAC details quality differences between the products

and the Proposed Second Amended Complaint ("PSAC") expands on those allegations, detailing a basis for competition that can factor in multiple considerations.

## III. Section 503A Does Not Render Competition Implausible.

Section 503A regulates eligibility for exemptions from specified FDCA requirements; it does not define relevant markets under the Sherman or Clayton Acts. *Compare Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 364 (2002) (§ 503A exempts certain compounded drugs from specified FDCA requirements if they satisfy enumerated conditions), *with United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956) (although the relevant market "will vary with the part of commerce under consideration," "[t]he tests are constant" and "the market is composed of products that have reasonable interchangeability . . . price, use and qualities considered."). The key question remains whether Strive plausibly alleged reasonable interchangeability, cross-elasticity, and competitive constraint in the asserted cash-pay GLP-1 market. The FAC does so, as Strive's moving brief explains.

### a. The Court incorrectly inferred that the FAC's patient-specific allegations mean branded treatment is impossible.

Moreover, Section 503A does not foreclose the alleged competitive relationship. The Court reasoned that the patient-specific considerations alleged in the FAC—including allergies, dosage variation, alternative delivery methods, and combination therapies—"are ultimately a finding that a branded medication is incapable of meeting a patient's specific medical needs." Doc. 55 at 11. The Court then concluded that compounded GLP-1 medications therefore "cannot reasonably be understood as an interchangeable substitute" for branded medications. *Id.*

Strive does not disavow its allegation that a compounded drug may be prescribed when an FDA-approved drug doesn't suit a patient's individual circumstances. But "doesn't suit" doesn't mean the branded drug is impossible for the patient to take or incapable of treating the patient's condition. The examples in the

FAC—patient-specific ingredient issues, dosage variation, delivery needs, drug interactions, and combination therapy—identify clinical considerations that may support a prescriber's decision that a modified formulation should be prescribed to the patient. The Court erred by treating those allegations as a concession that a branded drug must be categorically incapable of treating the patient. Defendants' endorsement of this analysis does not correct it. Doc. 57 at 4–6; Doc. 58 at 6–8.

**b. Section 503A's text and structure reject Defendants' binary construction of "necessary."**

Defendants likewise construe "necessary for the identified patient" in Section 503A as a binary: a compounded GLP-1 drug is permissible only if treating the patient with a comparable FDA-approved drug is impossible. Under Defendants' construction, it would be insufficient that a compounded drug improves tolerability, avoids a meaningful side effect, or provides a more suitable dosage form or strength.

Section 503A does not say that a prescriber may find a compounded drug necessary only when it is impossible to treat the patient with a comparable FDA-approved drug. Rather, it permits a prescriber to determine that a compounded drug is necessary because, for that patient, it mitigates a side effect or provides a dosage strength the patient can better tolerate than the branded drug, even though the branded drug can treat the patient. A finding otherwise would force medical practitioners to prescribe branded drugs even when they believe patients would suffer adverse side effects that they would not suffer from a compounded drug.

The structure of Section 503A confirms this reading. Congress separately prohibited pharmacists from compounding "regularly or in inordinate amounts" a drug that is "essentially a copy" of a commercially available drug. 21 U.S.C. § 353a(b)(1)(D). Congress's decision to restrict only the regular or inordinate compounding of "essentially-copy" drugs necessarily contemplates that, under some circumstances, such a drug may be compounded without violating Section 503A. If

"necessary" imposed the binary condition Defendants suggest, an otherwise "essentially-copy" compounded drug could not be prescribed even once unless a patient-specific feature made the branded product impossible for the patient to take. Defendants' construction of "necessary" effectively renders superfluous Congress's tailored restriction on regular or inordinate compounding of "essentially-copy" products. The more faithful reading gives effect to each part of the statute. "Necessary for the identified patient" requires a real, patient-specific medical basis for selecting a compounded drug. Section 503A(b)(1)(D), in turn, separately regulates the volume in which an "essentially-copy" drug may be compounded.

**c. Defendants' FDA guidance and statements, Strive's statements, legislative history, and authorities don't support their proposed construction of Section 503A.**

Defendants' FDA guidance and public statements do not establish a contrary rule. The 2018 guidance they cite principally addresses the separate "essentially a copy" limitation. Although the guidance describes Section 503A as preserving customized therapies for patients whose needs cannot be met by commercially available drugs, it doesn't equate that formulation with Defendants' categorical rule that a comparable FDA-approved drug must be impossible for the patient to take. Nor does FDA guidance supply a basis to read that condition into the statutory text. At most, Defendants' FDA guidance and public statements support the notion that compounding prescriptions should rest on a genuine, patient-specific medical basis; they do not establish that branded drugs must be impossible for the patient to take.

Defendants' reliance on Strive's public statements fares no better. Doc. 57 at 3; Doc. 58 at 10. Statements that compounding is for patients whose needs are not met by standard options use materially the same patient-specific formulation as the FAC; they do not concede that a branded drug must be impossible for the patient to take or incapable of treating the patient before a compounded drug can be prescribed.

Defendants' legislative-history authority likewise does not support their

binary construction. Doc. 58 at 8. The Senate Report describes the required showing as a "legitimate medical need" explaining why the commercially available drug "would not be appropriate." S. Rep. No. 105-43, at 67–68. It does not require that the branded drug be impossible for the patient to take or incapable of treating the patient. It is consistent with the patient-specific clinical determination Strive alleges here.

Defendants identify no decision holding that "necessary for the identified patient" requires a comparable FDA-approved drug to be impossible for the patient to take. *Medical Center Pharmacy v. Mukasey* holds that compounded drugs are subject to the FDCA's new-drug requirements unless they satisfy Section 503A's conditions. 536 F.3d 383, 397–98 (5th Cir. 2008). *Mukasey* recognizes that compounding produces patient-specific therapies, including calibrated dosages, alternative delivery routes, and specialized formulations. *Id.* at 387–88. But it does not construe "necessary" to mean an approved drug is impossible for a patient to take.

## IV. Strive Should Be Granted Leave to Amend.

Where a plaintiff seeks to alter or reopen a final judgment to permit amendment, a Rule 59(e) motion is governed by the same Rule 15(a) considerations that ordinarily control a request for leave to amend. *See Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Injury, LLC*, 168 F.4th 271, 276–78 (5th Cir. 2026). Under that standard, leave should be freely granted absent a "substantial reason," such as undue delay, undue prejudice, bad faith, repeated failure to cure deficiencies, or futility. *Id.* at 277. Defendants identify no such reason here. *See* Doc. 57 at 7; Doc. 58 at 16–20. Novo improperly treats the Court's ruling on the FAC as dispositive of the PSAC, but futility turns on the proposed pleading, not the superseded complaint. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) ("[W]e join our sister circuits that have interpreted [futility] to mean that the ***amended*** complain[t] would fail to state a claim upon which relief could be granted." (emphasis added)). Nor do Lilly's post-judgment contentions and prior-amendment arguments displace

the governing Rule 15(a) analysis. *Farmers*, 168 F.4th at 276–78. Moreover, Defendants fail to identify bad faith or a repeated failure to cure. Accordingly, even if the Court declines to alter its prior Order, it should grant leave to amend absent a substantial reason for denial.

**a. Strive's Proposed Amendment Is Not Futile.**

Futility is assessed under Rule 12(b)(6): amendment is futile only if the amended pleading would fail to state a claim upon which relief could be granted. *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). The Court must assess the PSAC itself, accepting its well-pleaded facts as true. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 592 (5th Cir. 2016). The PSAC meets the Rule 12(b)(6) standard: it adds allegations regarding interchangeability and cross-elasticity of demand, actual substitution between compounded and branded GLP-1 drugs, the competitive role of compounded products, and the competitive consequences of Defendants' conduct. Defendants' contrary arguments do not establish that the PSAC necessarily fails as a matter of law. Novo reprises its contention that Section 503A categorically forecloses the alleged market, while Lilly renews objections concerning market definition, antitrust injury, standing, and anticompetitive conduct. Doc. 57 at 8–9; Doc. 58 at 17–18. For the reasons above, Section 503A does not define the relevant antitrust market. Nor is amendment futile simply because the Defendants dispute the PSAC's allegations or invoke additional arguments not reached in dismissing the FAC. The PSAC must be evaluated independently and as a whole, not by isolating allegations also included in the FAC. *Stripling*, 234 F.3d at 873.

Defendants may test the amended allegations through ordinary motion practice, but the record does not show that the PSAC would necessarily fail as a matter of law. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 277–78 (5th Cir. 2010) (leave should be granted absent a substantial reason to deny it and that amendment is appropriate where defects are not necessarily incurable).

**b. Strive's Request for Leave Is Timely.**

Defendants do not establish undue delay. Delay alone is insufficient to deny leave to amend; "[t]he delay must be *undue*, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Farmers*, 168 F.4th at 278; *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018). The relevant prejudice generally arises "when amendments would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a parties [sic] ability to present their case at trial." *Robles v. Archer W. Contractors, LLC*, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015) (collecting cases).

This case remains at the pleading stage, no discovery has occurred, no trial date has been set, and Defendants possess the complete PSAC. The PSAC does not assert new claims, add new parties, or challenge different conduct. It supplements factual allegations concerning the same market definition, competitive injury, and anticompetitive conduct already at issue.

Novo's reliance on the post-dismissal timing of Strive's request and Lilly's reliance on Strive's prior amendment, dismissal briefing, and the earlier availability of some allegations do not change that result. Strive moved promptly and tendered a complete PSAC responding to the grounds for dismissal. And unlike the plaintiffs in the cases Novo cites, Strive did not delay for months, stand on its pleadings through extended proceedings, or fail to furnish a proposed amendment. *Farmers*, 168 F.4th at 278–80; *Whitaker v. City of Houston*, 963 F.2d 831, 836–37 (5th Cir. 1992); *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419–20 (5th Cir. 2010).

For the foregoing reasons, Strive respectfully requests that the Court grant its Motion, alter or amend the dismissal order, and reinstate Strive's claims. Alternatively, the Court should vacate the dismissal with prejudice and grant Strive leave to file the proposed Second Amended Complaint.

Dated: September 11, 2026

By: */s/ Joshua J. Bennett*

**BAKER & HOSTETLER LLP**
Joshua J. Bennett
Texas Bar No. 24059444
2850 North Harwood Street
Suite 1100
Dallas, TX 75201-2640
Tel.: (214) 210-1200
jjbennett@bakerlaw.com

Timothy S. Longman (*pro hac vice*)
Matt Schock (*pro hac vice*)
1050 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Tel.: (202) 861-1530
tlongman@bakerlaw.com
mschock@bakerlaw.com

David M. Prichard
Texas Bar No. 16317900
dprichard@pomllp.com
David R. Montpas
Texas Bar No. 00794324
dmontpas@pomllp.com
**Prichard Oliver Montpas, LLP**
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
Tel.: (210) 477-7400

*Attorneys for Plaintiff Strive Specialties Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 11, 2026 I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 11, 2026

By: */s/ Joshua J. Bennett*

**BAKER & HOSTETLER LLP**
Joshua J. Bennett
Texas Bar No. 24059444
2850 North Harwood Street
Suite 1100
Dallas, TX 75201-2640
Tel.: (214) 210-1200
jjbennett@bakerlaw.com