**FILED**
October 22, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: CM
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STRIVE SPECIALTIES INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 5:26-CV-00155-MA |
| | § | |
| ELI LILLY & CO., NOVO NORDISK A/S, and NOVO NORDISK INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers the "Motion to Alter or Amend the Judgment and for Reconsideration or, in the Alternative, Leave to Amend,"[1] filed by Plaintiff Strive Specialties Inc. ("Plaintiff"); the responses[2] filed by Defendants Eli Lilly & Company ("Eli Lilly") and Novo Nordisk A/S and Novo Nordisk Inc. (collectively, "Novo Nordisk"); and Plaintiff's reply.[3] After considering the record, motion, and relevant legal authorities, the Court **GRANTS** the motion to reconsider but **DENIES** the requested relief.

### I. PROCEDURAL BACKGROUND

The background of this case is well set out in prior orders. The Court sets out only the procedural background relevant to the disposition of the pending motion.

On August 3, 2026, the Court issued an Opinion and Order granting Defendants' motions to dismiss and dismissing all of Plaintiff's claims in this action with prejudice.[4] Central to the Court's dismissal of Plaintiff's claims was the Court's finding that Plaintiff could not allege any

[1] Dkt. No. 56.
[2] Dkt. Nos. 57 & 58.
[3] Dkt. No. 59.
[4] Dkt. No. 55.

cognizable antitrust claims under the Sherman Antitrust Act and Clayton Act because its compounded GLP-1 products were not meaningful market alternatives to Defendants' branded GLP-1 products.[5]

On August 21, 2026, Plaintiff filed the instant motion.[6] In its motion, Plaintiff asserts that the Court's August 3, 2026 Opinion and Order rests on incorrect legal premises and "contradicts" the factual allegations asserted by Plaintiff in its Amended Complaint, and requests that the Court "revise its August 3, 2026 Order pursuant to 54(b) or, alternatively, Rule 59(e); vacate the dismissal with prejudice; reinstate [Plaintiff's] Sherman Act and Clayton Act claims; or, alternatively, grant [Plaintiff] leave under Rule 15(a)(2) to amend . . . ."[7] Defendants filed timely responses on September 4, 2026,[8] and Plaintiff timely replied.[9] The motion is ripe for consideration.

## II. Discussion

Because the Court's August 3, 2026 Opinion and Order constituted a final disposition of all claims on the merits, Plaintiff's motion is properly considered under Rule 59(e), rather than Rule 54(b), which governs interlocutory orders.[10] A motion to alter or amend the judgment under Rule 59(e) is appropriate when the trial court committed a manifest error of law or fact, or when there is new evidence to justify reopening the case.[11] This type of motion is not to be used as a "vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised

[5] Dkt. No. 55, at 11–12.
[6] Dkt. No. 56.
[7] Dkt. No. 56, at 6, 23.
[8] Dkt. Nos. 57 & 58.
[9] Dkt. No. 59.
[10] *See* Fed. R. Civ. P. 54(b); Fed. R. Civ. P. 59(e).
[11] *See, e.g.*, *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 863 (5th Cir. 2003).

before entry of judgment."[12] Indeed, reconsideration of a judgment is "an extraordinary remedy that should be used sparingly."[13]

Plaintiff first advances several arguments centered on the contention that the Court committed a manifest error of law in concluding that Plaintiff could not plausibly allege that it competes with Defendants in any cognizable GLP-1 market. Specifically, Plaintiff contends that the Court erred by (1) "misread[ing]" Section 503A and placing undue emphasis on the premise that compounded drugs cannot compete with brand-name drugs because they are available only to patients whose prescribing physicians deem them "necessary"; (2) disregarding the alleged commercial realities of the GLP-1 product market; (3) applying an unduly demanding standard of interchangeability to determine whether products belong in the same antitrust market; and (4) resolving the relevant-market question on the pleadings rather than on a developed factual record.[14] Plaintiff further argues that compounded and branded GLP-1 products occupy the same market because they "serve the same therapeutic category, are prescribed for the same broad purposes, reach the same cash-pay patients through overlapping prescribing and telehealth channels, and compete for access to those patients,"[15] and likens the distinction between the parties' products to the differences between smartphones made by competing manufacturers.[16]

Plaintiff's claim of manifest legal error amounts to substantive disagreement with the Court's conclusions and rests on a misunderstanding of both Section 503A's role in the Court's analysis and the relationship between the parties' products. As the Court explained in its August 3, 2026 Opinion and Order, Plaintiff's "access to compounded medications is governed by medical

---

[12] *Id.* (citing *Simon v. U.S.,* 891 F.2d 1154, 1159 (5th Cir. 1990)).
[13] *Id*. at 478–79 (internal citations omitted).
[14] Dkt. No. 56, at 9–19.
[15] Dkt. No. 56, at 14.
[16] Dkt. No. 56, at 13.

necessity and regulatory constraints, not consumer preference."[17] It is conceivable that many prescribing decisions that physicians make between two commercially available products may resemble the scenario Plaintiff contemplates. Compounded drugs, however, may lawfully be produced only "for an identified individual patient."[18] A physician who prescribes a compounded drug is therefore not merely choosing between existing products that produce similar effects, but determining that available medications are unsuitable for the patient and that a tailored formulation is needed to address the patient's particular medical needs. That a physician knows that such a product can readily be prepared or has been prepared for other patients with the same needs does not eliminate this distinction. Regardless of the factors that inform a given determination that a compounded GLP-1 drug is "necessary" for a particular patient, that determination differs fundamentally from those ordinarily made by consumers assessing interchangeable products competing in a shared market.

Plaintiff's emphasis on "commercial realities" do not resolve this threshold problem. As the Court previously explained, "[a]bsent a foundational showing that the two products are meaningful market alternatives, considerations such as relative price, safety, or effectiveness can have little bearing on whether two products share a market."[19] And while individuals prescribed compounded GLP-1 medications may experience a secondary benefit of reduced relative cost, any such cost savings are incidental to the medical need supporting the prescription.

Plaintiff raises challenges to the dismissal of its Clayton Act claims and its allegations of antitrust injury.[20] But as the Court previously explained, these claims and allegations "rest on [the same] implausible theory of competition between non-interchangeable products" as Plaintiff's

---

[17] Dkt. No. 55, at 14.
[18] 21 U.S.C. § 353a(a), (a)(2).
[19] Dkt. No. 55, at 12.
[20] Dkt. No. 56, at 19–22.

Sherman Act claims.[21] Because Plaintiff has not identified a manifest error in the Court's rejection of that premise, those challenges likewise fail.

Plaintiff argues in a footnote that the Court lacked a sufficient basis to dismiss its claims insofar as they concern Defendants' alleged conduct before GLP-1 medications were removed from the shortage list in March 2025.[22] The Court finds this argument without merit. The Amended Complaint identifies only two instances of potentially relevant conduct during that period: Novo Nordisk's March 5, 2025 launch of NovoCare Pharmacy, a "direct-to-patient online pharmacy," and Eli Lilly's agreements with Teladoc, Ro, and LifeMD in "late 2024 and through early 2025," which allegedly prohibited those providers from working with compounding pharmacies to fill prescriptions for compounded GLP-1 drugs.[23]

Whether a drug is on the national shortage list has no bearing on the legitimacy, governing regulations, or market role of compounded medications that are not "essentially copies" of a branded medication and therefore has no bearing on the Court's analysis. To the extent that Plaintiff may be attempting to assert claims related to any production of medications that were "essentially copies" of Defendants' medications while those medications were listed on the national shortage list, nowhere in Plaintiff's complaint does it allege antitrust violations related to its production of GLP-1 medications that were "essentially copies" of Defendants' branded GLP-1 products during the GLP-1 national shortage, and the Court declines to read any such claim into the complaint now.

Finally, Plaintiff asks the Court to vacate the dismissal with prejudice and grant leave to amend, arguing that the Court failed to "explain why amending" would be futile.[24]

[21] Dkt. No. 55, at 14.
[22] Dkt. No. 56, at 10 n.2.
[23] Dkt. No. 41, ¶¶ 108, 114–118.
[24] Dkt. No. 56, at 22–23.

Upon the filing of the Motion to Dismiss, Plaintiff chose to stand on its pleading rather than attempting to cure its pleading deficiencies concerning cross-elasticity of demand. Even so, providing Plaintiff the opportunity to do so now would not alter the core deficiency of Plaintiff's complaint, which remains that Plaintiff's products lack the interchangeability and competitive relationship with Defendants' products necessary to support a claim cognizable in antitrust law. As the Court explained in its August 3, 2026 Opinion and Order, the Court does not foreclose the possibility that the alleged facts might support recovery under another area of law.[25] However, the injuries Plaintiff attributes to Defendants' alleged efforts to impede its operations or restrict its access to patients through telehealth providers are not cognizable under the antitrust theories asserted here, and none of the information Plaintiff seeks to add in its proposed amended pleading would cure this deficiency. Accordingly, finding that the proposed amendment would be futile, the Court declines to vacate its dismissal with prejudice or grant leave to amend.

## Conclusion and Holding

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to reconsider to the extent it requests reconsideration of the Court's Opinion and Order dismissing this action. Upon reconsideration, however, the Court **DENIES** Plaintiff's request to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The Court's Opinion and Order and the judgment dismissing this action remain in full force and effect.

IT IS SO ORDERED.

DONE this 20th day of October, 2026, in San Antonio, Texas.

MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE

[25] *See* Dkt. No. 55, at 14.